Ridley *v.* Halliday.

Ridley   *v.*   Halliday.

(*Nashville.   March 22, 1901.*)

1. CHANCERY COURT.   *Jurisdiction to convert realty.*

A Chancery Court has inherently, without the aid, and in the absence of any inhibition, of statute, jurisdiction and power to bind and conclude, by its decree converting realty into personalty, the rights and interests, whether legal or equitable, vested or contingent, present or future, of all persons, whether *in esse* or *in posse*, and whether *sui juris*, or under disability, who are before the Court either by service of process or by "virtual representation," but it must satisfactorily appear that such conversion is for the best interest of all the parties, and the decree must award the several parties the same interests in its proceeds which they enjoyed in the realty, and provide for protection of same.

Cases cited: Hurt *v.* Long, 90 Tenn., 445; Thompson *v.* Mebane, 4 Heis., 370.

2. SAME.   *Same.   Case in judgment.*

Where lands have been deeded to or in trust for A for life, remainder to his widow and children, and descendants of the latter, and, in default of such, to the children of the grantee and their descendants, a Court of Equity may, upon a bill filed by A and his trustee, representing the life estate, before the birth of any person of the first class of remaindermen, viz.: children of A, against the living children and grandchildren of the grantee, some of whom are infants, pronounce decree declaring that the conversion of such realty into personalty will be for the best interest of all parties—those *in posse* as well as those *in esse*—and converting same accordingly, and awarding and protecting the rights of the parties in the proceeds of the lands, and such decree will be binding upon the unborn children of A, on the theory that they are represented in the litigation by the life tenant.

FROM MAURY.

Appeal from Chancery Court of Maury County. ANDREW J. ABERNATHY, Ch.

W. C. SALMON for Ridley.

J. C. BRADFORD, E. H. HATCHER and FIGURES & PADGETT for Halliday.

BEARD, J. In 1895 J. W. S. Ridley, by deed of gift, conveyed to his son, Webb Ridley, a valuable farm of five hundred and eighty acres of land, in the county of Maury, upon the following trusts: That the said Webb Ridley, trustee, should permit and suffer his son, William Ridley, for and during his natural life, to have and receive the rents, incomes, and profits of said lands, and to exercise such control over the use, occupation, renting, and cultivation thereof as he, the said William, might deem proper, but in such way, nevertheless, that such lands, and the rents, incomes, and profits thereof, should not in any way be liable for the debts or contracts of the said William; that upon his, the said William's, death said lands should go to his children, and to the living issue of any deceased child, the issue taking the parent's share; that in case William left a widow surviving, she should have the right to occupy the land during her widowhood, sharing equally with the children, or their issue, the rents, incomes, and profits derived therefrom; that should said William at death leave a widow, but no children or issue of children, the trustee should suffer and permit her to receive and enjoy the income of the lands during her

life or widowhood, but so as they should not be liable for her debts or contracts, and that at the death or marriage of the widow, the lands should go to the grantor's other children, and to the issue of such of them as might be dead; that should William die leaving no widow or children, or issue of deceased child or children, the said lands should go to the grantor's other living children, or the issue of such of them as might be dead.

In 1898 the defendants, the two Strudwicks, and one Carpenter, made a written proposition to the trustee and the life tenant, in which they agreed to purchase this property at the price of seventy-five dollars an acre, upon the condition that the latter parties would institute proper proceedings in the Chancery Court of Maury County, and procure an acceptance of the same.

Upon receiving the proposition the trustee, Webb, and the life tenant, William P. Ridley, at once filed a bill in that Court, to which all persons in interest, *in esse,* were made parties defendant as follows: Annie Halliday and W. P. Halliday, her husband, and their minor child, W. P. Halliday, Mary P. Ridley, and the infant children of Webb Ridley. Of these defendants Annie R. Halliday and Mary P. Ridley were the children of the donor, J. W. S. Ridley, and the sisters of the trustee, Webb, and the life tenant, William Ridley.

22 P—39

In this bill, after setting out the deed of gift, the interests created by it, both vested and contingent, and the proposition for its purchase already set out, many reasons were then averred why it was greatly to the interest of all concerned that the same should be accepted. The prayer was that the matter might be referred to the Clerk and Master to take proof whether such sale would be advantageous, and in the event he should report it was, then that it be made. It was also averred that William Ridley, the life tenant, was unmarried, and that he had never had children born to him.

Answers were filed by the adult defendants and by guardians *ad litem* duly appointed for the minors. The answer of the adults conceded that it would be wise to accept the proposition of purchase, while those of the guardians *ad litem* simply craved the protection of the Court for the interest of the minors. The cause then proceeded to a reference to the Clerk and Master, who, after taking much proof, reported that the offer of purchase from the Strudwicks ·and Carpenter was a very advantageous one, and recommended its acceptance by the Court. This report was unexcepted to, and the Chancellor entered a decree of confirmation, and at ·the same time made provision· for the investment of the money received for the purchase of the property, so that the interests of all ·parties, born and unborn, might

be preserved in the fund as they existed, under the deed, in the land itself. From this decree a writ of error has been duly prosecuted.

No question was made in the Court below by demurrer, or otherwise, as to the jurisdiction of the Chancery Court to grant the relief sought by the bill. While if that Court had been absolutely lacking in jurisdiction of the subject-matter of the cause, then jurisdiction would not have been conferred by this failure to make an objection, by pleading, at the proper time (*Richards* v. *L. S. & M. S. Ry. Co.,* 124 Ill., 516), still as a Chancery Court has unquestionably the power in a proper case, where it has the proper parties before it to convert realty into personalty (*Ruggles* v. *Tyson,* 104 Wis., 500; *Gavin* v. *Curtin,* 171 Ill., 641), a failure to make objection by some preliminary pleading is a waiver of objection that the Court is without jurisdiction to proceed in the cause.

But not only no jurisdictional objection was taken in the Court below, none is made here. To the contrary, the power of the Court to decree the conversion of the realty into money under the conditions averred in the bill and established by the evidence, was conceded there, and is equally conceded in this Court. The only question made upon this appeal and by assignment of error is, that as the record shows that the life tenant, William Ridley, was unmarried and without chil-

dren, that the decrees pronounced would not bind such children should they hereafter be born to him, upon his possible future marriage, the contention of the appellants being that they are without virtual representation in the case. This insistence rests in part upon § 5086 of the (Shannon's) Code, and in part upon the rule of jurisprudence so generally recognized that no one is bound by a judgment or decree, save parties to the record regularly served and their privies.

What may be the proper construction of this Code section we think it unnecessary to determine in this cause. It is one of the sections of Chapter 3 of Title 2 of Part III. of the Code. This chapter is entitled "Of the Sale of Property of Persons under Disability," and the body of the chapter is in keeping with the title. Section 5072 (this being the first section of the chapter) provides that "the Court of Chancery may, for and on behalf of persons laboring under the disability of coverture and infancy, consent to and decree a sale of the property . . . of such persons under the provisions of this chapter," while Section 5073 provides that this "application may be made by bill or petition filed by the husband or regular guardian, to which the person under disability is a defendant, to be represented by next friend or guardian ad litem," etc.

The present bill is not filed within these statutory provisions. It is not filed either by a

husband of a married woman asking a sale of her property, or by a guardian of minors seeking the same relief as to theirs. It is that of a trustee and life tenant, who, bringing all the contingent remaindermen *in esse* into Court, and averring the necessity of such relief, ask that real estate in which these parties have a contingent interest be sold by order of Court, and that its proceeds be held subject to the trusts imposed upon the realty. The bill being outside these provisions must rest upon the inherent power of a Chancery Court to grant such relief, and by its decree for conversion bind parties who may hereafter come into existence.

There is no doubt that if there had been in being, and made a party by proper process to this cause, one of the first class of contingent remaindermen provided for in the trust deed, the decree would have bound all other members of the class who subsequently came into being. That result follows from the doctrine of representation, it being assumed that the living representative would look after the interests of the entire class by bringing to the attention of the Court the merits of the controversy, so far as they affected the class. But in the absence of a member of such class, can the decree herein pronounced carry the whole title to the purchasers? This was the purpose in filing the bill, and if it fails in this respect the failure is absolute.

It has been held by a large majority of the Courts, both English and American, that in certain cases the life tenant will represent contingent remaindermen where no one of the latter is *in esse* at the time the Court is called upon to intervene with regard to the estate in controversy.

In *Finch* v. *Finch,* 2 Vesey, Sr., 492, in passing upon the rule of virtual representation as applied to the sale of lands limited in remainder, under a bill to execute trusts, Lord Hardwick said: "It is admitted to be necessary to bring in the first person entitled to the remainder and inheritance of the estate, if such is in being. It is true, if there is no such person in whom the remainder of the inheritance is vested in being, then it is impossible to say the creditors are to remain unpaid, and the trust be not executed until a son is born. If there is no first son in being, the Court must take the facts as they stand. It would be a very good decree, and no son born afterward could dispute it unless he could show fraud, collusion, or misbehavior in the performance of the trust."

In *Leonard* v. *Lord Sussex,* 2 Vernon, 527, there was a tenant for life with remainder to his sons. The tenant for life, before he had a son born, brought a bill against the trustees, in whom the title was vested, for an account which

was decreed, and it was held that the account should stand and be binding upon the sons.

In *Gaskell* v. *Gaskell,* 6 Simons, 643, there was a tenant for life with remainder to his first and other sons in tail of an undivided moiety of certain estates. The tenant for life before a son was born to him filed his bill against his co-tenants for partition. Objection was made that the complainant then had no issue in being. But the Vice Chancellor (Shadwell) in overruling this objection said the Court had frequently decreed partition under such circumstances, and that a decree for partition in that case would be binding upon the tenant in tail when he came into being.

In *Gifford* v. *Hart,* 1 Scho. & Lef., 408, Lord Redesdale announced the rule thus: "Courts of Equity have determined on grounds of high expediency that it is sufficient to bring before the Court the first tenant in tail in being, and if there be no tenant in tail in being, the first person entitled to the inheritance, and if no such person, then the tenant for life. . . . Where all the parties are brought into Court, and the Court acts on the property according to the rights that appear without fraud, its decision must of necessity be final and conclusive. It has been repeatedly determined that if there be a tenant for life, remainder to his first son in tail, remainder over, and he is brought before the Court

before he has issue, the contingent remaindermen are bound. This is now considered a settled rule of Courts of· Equity, and of necessity."

Perhaps no one in the history of equity jurisprudence can more properly be said to be a master of the rules and practice of the English Chancery Courts. Before his elevation as John Mitford he had published a work on "Equity Pleading and Practice," which is regarded as a valuable text-book by the profession to this day. In that work he embodied the rule of virtual representation which he subsequently announced in the case last cited.

Turning to the cases determined by American Courts, with the exception of the Supreme Court of North · Carolina, we find them holding the same rule. In *Cheeseman* v. *Thorne,* 1 Edw. Chy., 629, the Vice Chancellor held that the partition proceedings in that case would bind afterborn remaindermen under the authority of *Wills* v. *Slade,* 6 Vesey, Jr., 498, even without the aid of statute.

In *Kent* v. *Church,* 136 N. Y. (S. C., 18 L. R. A., 334), in the course of its opinion the Court said: "Where an estate is vested in persons living subject only to the contingency that persons may be born who will have an interest therein, the living owners of the estate for all purposes of any litigation in reference thereto, and affecting the jurisdiction of the courts to

Ridley v. Halliday.

deal with the same, represent the whole estate, and stand not only for themselves, but also for the persons unborn. This is a rule of convenience and almost necessity. The rights of persons unborn are sufficiently cared for if when the estate shall be sold under a regular and valid judgment its proceeds take its place, and are secured in same way for such persons."

The case of *Gavin* v. *Gavin*, 171 Ill., 640 (S. C., 40 L. R. A., 777), is directly in point. The complainant in that case, under the will of her father, was tenant for life, with remainder in fee to her children, or to the issue of any of these children dying during the existence of the life estate, and in the event of her death without children or the issue of such, then remainder over to the testator's sons. Before the birth of any child the life tenant filed a bill for the conversion of this real estate, stating strong equitable grounds therefor, and made as the only defendants thereto her brothers, who were contingent remaindermen of the second class. It was held that the bill was maintainable, and that the decree for sale of necessity would bind her after born children.

In addition we refer to *Ruggles* v. *Tyson*, supra; *Sweet* v. *Parker*, 22 N. J. E., 454; *Baylor* v. *Dejarnette*, 13 Gratt., 152; *Faulkner* v. *Davis*, 18 Gratt., 651; *McArthur* v. *Scott*, 113 U. S., 391.

The authors of works on Equity Pleading and Practice, so far as we have examined, with singular unanimity adopt the same view. Reference is here made to Mitford on Eq. Pl. & Pr., supra; Calvert on Parties, 49-53; Tyler on Parties, 24; Story's Equity Pleading, Sec. 145. In the section referred to Judge Story says: "Doubts were formerly entertained whether in suit in equity for a partition, brought only by or against a tenant for life of the estate, where the remainder is to persons not *in esse,* a decree could be made which would be binding upon the persons in remainder. That doubt, however, is now removed, and the decree is held binding upon them upon the ground of a virtual representation of them by the tenant for life in such cases."

It is true that this statement of the rule by the author is by its terms limited to cases in partition, but as we have already seen it was applied in *Leonard* v. *Lord Saxon,* supra, in the matter of account, and to the enforcement of a trust in favor of creditors by a decree for the sale of lands. *Finch* v. *Finch,* supra. No sound reason has been, or so far as we can discover, can be suggested why it should not apply in any other proceeding where a Court of Equity is exercising its jurisdictional power in disposing of real estate, the title to which is embarrassed by contingent remainders awaiting unborn remaindermen. If in the one class of cases necessity

requires an application of the doctrine of virtual representation, why should it not be as operative in the latter? We have held that without the aid of the statute already referred to, a Court of Equity, in proper cases, has the inherent power to convert, for the benefit of minors, realty into personalty. *Hurt* v. *Long,* 90 Tenn., 445; *Thompson* v. *Mebane,* 4 Heis., 370. In such a case could there be found any solid ground for distinguishing it, so far as this matter of representation is concerned, from a case of mere partition? We think not. If in the case of partition and of the conversion of the property of infants, falling within the inherent jurisdiction of Courts of Equity, then why not in every case, where the nature of the trusts and the situation of the property make it eminently judicious if not absolutely essential, in the interest of all persons *in esse* as well as *in posse,* that a conversion should take place?

In each case it is essential that the interest of the contingent remaindermen in the proceeds of the converted property be preserved by the decree directing the conversion. *Monarque* v. *Monarque,* 80 N. Y., 320. This being done we see no good reason why the rule of virtual representation should not apply. Even if the limitation or qualification suggested in Calvert on Parties, page 52—that is, "that except under very particular circumstances no tenant for life should be capable

of maintaining the suit, unless he were one to whose issue there was a remainder in tail"—is to prevail, the present case would fall within its spirit. For here the contingent remaindermen whom the tenant for life represents are not remaindermen in tail, yet they are children who may be born to him, and the children of such as may die during his life.

We have examined the cases from North Carolina referred to in the able and exhaustive brief of the counsel for appellants, and while they are entitled to great consideration, we think they are overborne by the weight of authority. There is nothing in our own cases to exclude us from the rule we have already indicated, and we think that its adoption is consistent with sound policy, and when applied under proper restrictions will work to the advantage of all interests involved.

Before concluding, it is proper to say that upon the authorities it is immaterial whether in such a case the bill is brought by or against the tenant for life. *Gaskell* v. *Gaskell,* supra; *Hale* v. *Hale,* 146 Ill., 257; *Leonard* v. *Sussex,* supra; Story's Eq. Pl., Sec. 145.

The decree of the Court of Chancery Appeals is affirmed.