MARGARET F. DOWNEY, Appellant, v. GEORGE DAN SEIB. Respondent.

MARKETABLE TITLE — REFORMATION OF DEED — WHEN JUDGMENT REFORMING DEED SO AS TO CONVEY AN ABSOLUTE TITLE, INSTEAD OF A LIFE ESTATE WITH REMAINDER OVER TO UNBORN CHILDREN, IS NOT EFFECTUAL TO BAR TITLE OF PERSONS BORN AFTER JUDGMENT. A father intending to give to his daughter a house which he had bought for her and in which she then resided, executed, together with his wife, a deed which he supposed conveyed to her an absolute title to the premises, and had it recorded. About three years afterward it was first discovered that, by a mistake of the scrivener, the deed did not convey the premises absolutely and in fee simple, but only for life with a remainder over to the daughter's children, if living at the time of her death, and to the issue of any deceased child, and upon her death without lawful descendants to her three brothers, or to the survivor or survivors of them living at the time of her death, and the lawful children and issue, if any, of such of said three brothers as might then be dead. When the mistake was discovered and the father informed thereof, he said that he intended to make her an absolute conveyance, and that he would correct the mistake, at once, by a new deed; and the brothers immediately united in a conveyance to their sister with full warranty. The father died before he could execute the new deed, as he had promised, leaving a will, executed after the erroneous deed, in which he left the daughter no part of his estate, believing that he had already made suitable provision for her by the absolute conveyance of said premises. Thereafter the daughter, who was married but had no children, began an action against her mother, her three brothers, who were then unmarried, and the executor of her father's will for a reformation of the deed so as to make it conform to the intention of the parties when it was made. That action, which was not defended, resulted in a judgment reforming the deed by making it an absolute conveyance, and directing that a reference to said judgment should be entered upon the margin of the record of the deed. Several years later the daughter entered into a contract to sell the premises to a purchaser, who, upon examining the title, refused to accept the deed and perform his agreement to purchase the property, upon the ground that the title was not marketable. In a proceeding instituted by her to compel the purchaser to accept title to the premises, it appeared that one of her brothers had died unmarried; that the other two brothers had married and had children; that their respective wives and children were then living, and that the plaintiff had a husband living, but had no children, and for physical reasons could not have any. *Held*, that by the conveyance from her brothers the plaintiff had acquired the first freehold estate,

namely, the remainder in fee after her own life estate, subject to be divested by her leaving issue before her death, so that she held the estate which in the ordinary course of things would make it to her interest to uphold the deed, but that she was the very party who was trying to destroy it; that she could not be plaintiff and defendant in the same suit; that she in fact represented herself only, and could not represent her after-born children or those of her brothers; that the interest of her brothers was the same as her own, because they had their warranty of title to protect. Therefore, the judgment recovered by her did not bar the title of persons born after the judgment was rendered who were not represented by any party to the action, and hence the title was not marketable.

*Downey* v. *Seib,* 102 App. Div. 317, affirmed.

(Submitted May 10, 1906; decided June 12, 1906.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered March 20, 1905, in favor of defendant, upon the submission of a controversy under section 1279 of the Code of Civil Procedure.

The controversy arose over the title to land on Jefferson avenue in the borough of Brooklyn through the claim of the defendant that he was not obliged to perform his contract of purchase because the title was not marketable. The history of the title as set forth by the parties in their agreed statement of facts is substantially as follows: On the 13th of November, 1889, one John Scott, Sr., who then owned the premises in question, and his wife Ann, conveyed the same to their daughter Margaret, who is the plaintiff in this action, for life, with remainder over to her children living at the time of her death, and the issue of any deceased child, and upon her death without lawful descendants to her brothers, John, James and William Scott, who were parties of the third part, " or to the survivors or survivor of them living at the time of the death of the said Margaret and the lawful children and issue, if any, of such of said three sons as may then be dead."

At the time he executed said conveyance Mr. Scott was worth about $100,000. He had four children, the plaintiff and the three sons already named, who were then his only descendants. Shortly before he gave the deed, being well

advanced in years, he told his children at a family consultation that he was about to make a will and that he intended to give Margaret the house in question, which he had bought for her and in which she then resided. All of the children approved of this plan, whereupon he told the plaintiff that he would convey to her accordingly, and shortly thereafter he informed her that he had done so and had filed the deed for record. Acting on the belief that this was true she expended a large sum of money in repairing and improving the house and premises.

About the 20th of October, 1892, the plaintiff first learned that the deed did not convey the premises to her absolutely and in fee simple, but only for life with remainder over, as already stated. She at once informed her father of the fact and he said that he intended to make her an absolute conveyance, but the lawyer who drew the deed had made a mistake, which he would have corrected at once by a new deed. John, James and William Scott, on learning of the mistake, promptly united in a conveyance of the premises to the plaintiff with full warranty. John Scott, Sr., was ill when the mistake was discovered, and, rapidly growing worse, died on the 5th of November, 1892, before he could execute the new deed, as he had promised. The plaintiff was then about thirty years old, and although she had been married for more than seven years, she had never had any children and for physical reasons expected none. This fact was known to her father, who in his will, executed after the deed, left her no part of his estate, because he believed that he had already made suitable provision for her by the absolute conveyance of said premises.

Early in 1893 the plaintiff herein, alleging the foregoing facts among others in her complaint, commenced an action against her mother, her three brothers, none of whom had then been married, and the executor of her father's will, for a reformation of said deed so as to make it conform to the intention of the parties when it was executed. That action, which was not defended, resulted in a judgment, entered on

the 2nd of November, 1893, reforming the conveyance from John Scott, Sr., to his daughter by making it absolute in form and directing that the register of Kings county should, by apt and proper words, insert in the margin of the liber where said deed was recorded a reference to such judgment.

Said William Scott died before this controversy arose; having never been married. Some years after the rendition of said judgment, John Scott, Jr., and James Scott, sons of John Scott, Sr., married, and their respective wives are living. John has two children, and James one. The plaintiff has no issue, and her husband is still living. She is now forty-one years of age, has been married nineteen years and is not likely to become a mother owing to a structural defect in the organs of generation.

Upon submitting the controversy the plaintiff demanded judgment that the defendant perform his agreement to purchase said premises and pay her the balance of the purchase money. The defendant demanded judgment that the plaintiff could not convey the premises, as she had agreed, by a good and sufficient deed in fee simple, for a return of the sum of $200 paid on account of the contract of purchase and the sum of $75 for the reasonable expense of searching the title. The Appellate Division rendered judgment relieving the defendant from his contract and awarding judgment against the plaintiff for the sum of $275 besides costs. From that judgment the plaintiff appealed to this court.

*Isidor Wels* for appellant. The effect of the conveyance by John Scott, Jr., James Scott and William Scott to the defendant, and the decree of reformation in the action brought by her against the executors, heirs at law and widow of John Scott, deceased, was to make the original deed read as if it had been a full covenant and warranty deed of the entire fee. (*Wright* v. *Delafield*, 23 Barb. 498; *M. B. Co.* v. *Woodson*, 59 Mo. App. 550; *Matthews* v. *Lightner*, 85 Minn. 333; *Ladd* v. *Weiskopf*, 62 Minn. 29.) Where an estate is vested in persons living, subject only to the contingency that persons

may be born who will have an interest therein, the living owners of the estate, for all purposes of any litigation in reference thereto and affecting the jurisdiction of the courts to deal with the same, represent the whole estate, and stand not only for themselves, but also for the persons unborn. This is a rule of convenience, and almost of necessity. (*Kent* v. *Church of St. Michael*, 136 N. Y. 10; *Mead* v. *Mitchell*, 17 N. Y. 210; *Pray* v. *Hegeman*, 98 N. Y. 351; *Moore* v. *Little*, 41 N. Y. 82; *Baker* v. *Lorillard*, 4 N. Y. 266; *Rhodes* v. *Caswell*, 41 App. Div. 229; *Fox* v. *Fee*, 24 App. Div. 314; *Goebel* v. *Iffla*, 48 Hun, 21; *Miller* v. *T. P. R. Co.*, 132 U. S. 662; *McArthur* v. *Allen*, 3 Fed. Rep. 313; *Gray* v. *Smith*, 76 Fed. Rep. 525.) If there was no defect of parties in the action brought by Mrs. Downey to reform the deed, the judgment in that action acts *in rem*, and is binding on all persons living as well as on those born thereafter. (*Kent* v. *Church of St. Michael*, 136 N. Y. 19; Bispham's Eq. [4th ed.] § 37; Pom. Eq. Juris. [2d ed.] §§ 423, 424; Story's Eq. Juris. [12th ed.] §§ 25, 33; *Garvin* v. *Curtin*, 171 Ill. 640; *Mead* v. *Mitchell*, 17 N. Y. 210; *Pray* v. *Hegeman*, 98 N. Y. 351; *Goebel* v. *Iffla*, 111 N. Y. 170.)

*Isaac Ringel* for respondent.

Vann, J. John Scott, Sr., probably could not write, for he signed the conveyance in question as a marksman, and perhaps he could not read. At all events, he did not understand that cumbersome and complicated instrument, which, with its parties of the first, second and third parts, its reversions, remainders and wealth of technical words, doubtless reflected the learning of the scrivener better than the instructions of the grantor. The unfortunate result is a title in the air and unmarketable perhaps for a generation.

There would be little difficulty were it not for the action, unselfish and well intended but not well advised, of the remaindermen in conveying to the life tenant before the judgment of reformation was rendered. While they wished simply to correct the mistake of their father so far as they

could and to give their sister a good title, they created such a situation as to leave no one to be made a party to the action to reform the deed, who represented unborn children and who through his own interest would be presumed to see that there was a fair trial and a just disposition of the case.

It is well settled, as stated by Judge EARL in a recent case, that "where an estate is vested in persons living subject only to the contingency that persons may be born who will have an interest therein, the living owners of the estate, for all purposes of any litigation in reference thereto and affecting the jurisdiction of the courts to deal with the same, represent the whole estate and stand not only for themselves, but also for the persons unborn. This is a rule of convenience and almost of necessity." (*Kent* v. *Church of St. Michael*, 136 N. Y. 10, 17.) After distinguishing *Monarque* v. *Monarque* (80 N. Y. 320) upon the ground that the court took jurisdiction of that action only by consent, and that, therefore, its adjudication bound only those who consented and could not bind persons not in being, the learned judge continued : "That case did not determine that in a proper action for the construction of a will persons not *in esse* could in no case be concluded by the judgment rendered therein. That they could be concluded I have no doubt, if the parties to the action properly brought were vested with the whole title, subject merely to the contingency that it might open and let in persons thereafter to be born."

So Mr. Freeman, in his valuable work on Judgments, said in section 172 : "If several remainders are limited by the same deed, this creates a privity between the person in remainder and all those who may come after him ; and a verdict and judgment for or against the former may be given in evidence for or against any of the latter." (See, also, Black on Judgments, § 554 ; 24 Am. & Eng. Encyc. [2d ed.] 759.)

The principle upon which the rule above stated rests is that the tenant of the first estate virtually represents the subsequent estates, because he has a common interest with the other parties in defending. Mere privity in blood does not author-

ize one party to defend the interest of another. Thus, again referring to Mr. Freeman, we find that " Kinship, whether by affinity or consanguinity does not create privity, except where it results in the descent of an estate from one to another. Therefore, there is no privity between husband and wife, or parent and child, or other relatives, when neither of them has succeeded to an estate or interest in property formerly held by the other." " It is essential to privity, as the term is here used, that one person should have succeeded to an estate or interest formerly held by another. He who has so succeeded is in privity with him from whom he succeeded and all the estate or interest which he has acquired is bound by the judgment recovered against his predecessor while he held such interest or interests." (Freeman on Judgments, § 162.)

" If a person is bound by a judgment, as a privity to one of the parties, it is because he has succeeded to some right, title, or interest of that party in the subject-matter of the litigation and not because there is privity of blood, law or representation between them, although privity of the latter sort may also exist." (Black on Judgments, § 549.)

While the learned authors, who are well supported by authority, may refer particularly to cases where the successor has taken the very title of the party against whom the judgment is recovered, we cannot see why the principle is not equally applicable to the case of the holder of one estate and the tenant of the subsequent estate.

The case of *McArthur* v. *Scott* (113 U. S. 340) is instructive, if not controlling on the subject. There after-born remaindermen were allowed to enforce a trust in lands devised by their grandfather under a will, which was adjudged void in an action brought and decided before their birth. Mr. Justice GRAY, speaking for the court, recognized the general rule as to parties not in being, but he said: " In every case there must be such parties before the court as to insure a fair trial of the issue in behalf of all." The parents of the plaintiffs in that action were parties, but as stated by the court,

had no interest to support the will though they had an interest to destroy it.    There were charges in the complaint that the suit was fraudulent, but these were denied by the answer and the court held that they should be considered as disproved.    The decision rested on the ground that there was no real representation in the action of the subsequently accruing interests.    This is made plain in a later case where Mr. Justice BRADLEY, in commenting upon *McArthur* v. *Scott*, said : " There was no party in the case to represent the will, or the interests created by it, or the legal estate which supported those interests.    This was the special ground on which the decision in *McArthur* v. *Scott* was placed, as is fully expressed in the opinion." (*Miller* v. *Texas & Pac. Ry. Co.*, 132 U. S. 662, 671.)

In the present case, by the conveyance from her brothers the plaintiff had acquired the first freehold estate, namely, the remainder in fee after her own life estate, subject to be divested by her leaving issue before her death.    Therefore, she held the estate which in the ordinary course of things would make it to her interest to uphold the deed, but she was the very party who was trying to destroy it.    She could not be plaintiff and defendant in the same suit.    She in fact represented herself only and could not represent her after-born children or those of her brothers.    The interest of her brothers was the same as her own, because they had their warranty of title to protect.    We are inclined to the opinion, therefore, that the judgment recovered by her did not bar the title of persons born after the judgment was rendered who were not represented by any party to the action.

At least, the question is too doubtful to warrant the courts in compelling the purchaser to take title under such circumstances, for the persons entitled to raise the question are not parties to this controversy.    As, since the date of the judgment of reformation, children have been born, it may be that the plaintiff can bring a new action, and by making them parties clear the title.    In such an action those children would represent all who might be born thereafter, for they would

have a common interest.  That remedy, however, can have no effect on this action, and our present duty is to affirm the judgment appealed from.

While in this case, as we feel well assured, there was neither furtive motive nor evil result in the judgment of reformation, still, if we sustain the position of the plaintiff, our adjudication will declare the law to govern all cases of like character arising hereafter and the next to come before us may involve the robbery of children by a judgment rendered before they were born, with no one to represent or defend them.  A general rule, established by the decision of a question of law, is much more important than the effect in a particular case.

The judgment should be affirmed, with disbursements, but, under the circumstances, without costs.

CULLEN, Ch. J., O'BRIEN, HAIGHT, WERNER and HISCOCK, JJ., concur; WILLARD BARTLETT, J., not sitting.

Judgment affirmed.