## W. H. BARNETT et ux. v. C. P. DANIEL et al.

Middle Section. March 14, 1930.

Petition for Certiorari denied by Supreme Court, June 28, 1930.

E. W. Eggleston and Earl Beasley, of Franklin, for appellant.
Wirt Courtney, of Franklin, for appellees.

FAW, P. J.  The bill in this case was filed in the Chancery Court of Williamson County on October 9, 1929, by W. H. Barnett and his wife Addie Myrtle Barnett, residents of Davidson county, Tennessee, as complainants, against C. P. Daniel, a resident of Williamson county, and Mrs. Hattie Robinson, a resident of Davidson county, as defendants.

The complainants sought by their bill to obtain a decree confirming a sale which complainants had theretofore contracted to make to defendant C. P. Daniel of a small parcel of land which, according to the description in the bill, fronts 89¾ feet on the north side of the Liberty Pike, in the suburbs of the town of Franklin in Williamson county, Tennessee, and runs back, between approximately parallel lines, 265 feet, and upon which lot there is a dwelling house.

Complainants allege in their bill that they have contracted with defendant Daniel to sell said property for the consideration of $1600 cash,—the purchaser to have immediate possession, but complainants to pay the 1929 taxes, "as set out in terms of written contract which will be filed on or before the hearing."

It appears that the written contract thus mentioned in the bill was lost, and, for that reason, it is not a part of the record. However, the loss of the written contract is not material, for the reason that the complainants and defendant Daniel agree that there was a contract for the sale and purchase of the aforesaid property and there is no dispute with respect to the terms of the contract. In his answer to the bill defendant Daniel says:

"It is true that respondent agreed with complainants to purchase said lot or parcel of land for $1600 cash, on condition that a fee-simple title, unincumbered, be conveyed to him, but he denies that complainants, under the various instruments set out in the bill, are the owners of the fee-simple title thereto, and denies that all parties in interest, present and prospective, are properly before the court in this cause, and he denies that the court, therefore, is with authority to vest this respondent with a fee-simple title to said lot or parcel of land. It is true that the price agreed to be paid by respondent is a full, fair and adequate one, and respondent stands ready to comply with his contract of purchase in the event he is, or can be, vested with a fee-simple title to said lot."

Defendant Mrs. Hattie Robinson did not answer or otherwise make defense to the bill and it was, by order duly entered, taken for confessed as against her.

The Chancellor referred the cause to the Clerk and Master, with directions to take proof, and therefrom ascertain and report certain facts specified in the order of reference, and the Master thereafter filed a report which is embodied in the final decree of the court, which decree is as follows:

"This cause came on to be heard this day before the Honorable J. C. Hobbs, Chancellor, etc., upon the record at large and particularly upon the report of the Clerk and Master which report is in words and figures following, to-wit:

"To the Chancellor:

"The undersigned, Your Honor's Clerk and Master, respectfully reports that in obedience to an order of reference heretofore made in the cause he has considered of the pleadings and has taken the depositions of W. H. Barnett, Winder McGavock and J. M. Buchanan, and from a consideration of all of same, reports as follows:

"As to the First Head: The legal description of the property involved is as follows:

" 'Lying on the north side of the Liberty Pike, in the Ninth Civil District of Williamson county, being a part of the Alpheus Truett tract, a plot of which is of record in Minute Book X in the chancery court at Franklin; beginning in the center of Liberty Pike at the corner of Lots 8 and 9; thence north 3¾ east 265 feet to a stake in line of Lots 8 and 9; thence north 89¼ west and parallel with said Liberty Pike 100 feet; thence south 3¾ west 265 feet to the center of Pike; thence with same 89¾ feet to the beginning.'

"Generally, the property is located on the Liberty Pike, a residential section adjoining Franklin where houses are for most part of comparatively small value. The Barnett property is a modest dwelling that is deteriorating in value, being rented out, and is now in need of repairs. (O. B. Deps. W. H. Barnett, Winder McGavock.)

"As to the Second Head: The exact status of title at this time of said property is as follows:

"One R. H. McKay formerly owned this property, dying testate in 1914. His will is of record in Will Book 24, page 195, County Court Clerk's Office of Williamson county. Item 2 of said will is as follows:

" 'Item 2: It is my will that after the homestead and dower provided by law has been laid off and set apart to my wife Mrs. Elizabeth McKay, that all the balance of the real estate of which I die seized and possessed shall pass to my niece Mrs. Hattie Robinson (nee Hattie Buchanan) for and during her

natural life, and at her death to her child or children should she leave a child or children surviving her.'

" 'I also will my said niece the remainder interest in the homestead and dower of my wife, but in the event my said niece should not survive my wife, then said remainder interest shall go to the child or children of my said niece, should she have a child or children living at the time of the death of my said wife.'

"This will was dated April 23, 1910, and after its execution but before its probate, by instrument signed by R. H. McKay and his wife Mrs. H. E. McKay, she accepted the sum of $1500 in lieu of all claim in his estate, both real and personal, at the time of his death, said instrument being recorded in Trust Deed Book 24, page 232, Register's Office of Williamson county, Tennessee, so that the provisions with respect to homestead and dower in said will was and is of no force and effect.

"The tract or parcel of land described passed under Item 2 'to Mrs. Hattie Robinson for and during her natural life and at her death to her child or children should she leave a child or children surviving her,' with no provision as to the passing of title in the event she did not leave a child or children.

"The said Mrs. Hattie Robinson is considerably past the age of fifty and any probability of issue is remote, she never having had any children.

"By instrument dated August 31, 1917, registered in Deed Book 41, page 482, Register's Office of Williamson county, E. B. Buchanan, J. M. Buchanan, J. S. McKay, Maggie McKay, Mamie West, Mattie McKay Timmons, R. S. McKay, Allen C. McKay, J. P. McKay, C. A. McKay, Maggie Gilliam, Annie Vincent, W. B. McKay, F. A. McKay and R. D. Buchanan transferred and conveyed all their interest, present and prospective, vested and contingent, in both real and personal estate of R. H. McKay, deceased, to the said Mrs. Hattie Robinson. Those parties constituted all the heirs at law of R. H. McKay, deceased, and all the heirs at law of Mrs. Hattie Robinson.

"Thereafter, by deed dated October 13, 1919, of record in Deed Book 47, page 44, Register's Office of Williamson county, Mrs. Hattie Robinson conveyed the property above described to one Fred Barnett for a consideration of $1400 paid or thereafter paid.

"Said Fred Barnett died intestate in the year 1926 leaving surviving no widow and as his only heirs at law complainant W. H. Barnett and J. F. Barnett, being his only children.

Thereafter, by deed dated May 22, 1926, of record in Deed Book 56, page 16, R. O. W. C., J. F. Barnett, joined by his wife Alma Barnett, conveyed his one-half undivided interest in said property to .W. H. Barnett for the consideration of six hundred dollars cash. Thereafter, by deed dated June 16, 1926, of record in Deed Book 56, page 17, R. O. W. C., complainant W. H. Barnett conveyed to complainant Addie Myrtle Barnett, who is his wife, a one-half interest in said property, so that complainants now jointly own said property subject to such conditions, if any, as may exist by reason of the will of R. H. McKay, deceased, heretofore set out.

"Mrs. Hattie Robinson is duly before the court by service of process, and under the theory of virtual representation I report that all parties having any interest, vested or contingent, are properly before the court. (O. B. Deps. W. H. Barnett, J. M. Buchanan.)

"As to the Third Head: Mrs. Hattie Robinson is 56 years old, has never had a child, and the probability of issue is very remote. (Dep. J. M. Buchanan.)

"As to the Fourth Head: Complainants have contracted with C. P. Daniel to sell the property for the consideration of sixteen hundred dollars cash, complainants to pay the 1929 taxes, with immediate possession. I report upon competent and credible proof in view of the location of said property, the character of improvements, the state of repair that said property is in, the fact that the owners do not live in this county and must necessarily rent out to an undesirable class of tenants who do not take the proper care of same, that it would be manifestly to the best interests of all parties that said contract of sale be ratified and confirmed, the price offered being full, fair and adequate. (Deps. Winder McGavock, W. H. Barnett.)

"Respectfully submitted. L. W. Buford, C. & M. Filed Dec. 23, 1929.

"L. W. Buford, C. & M.

"And said report having been read and fully understood by the court, having been on file for more than five days and being unexcepted to, is in all things confirmed.

"And it appears to the court that under Item 2 of the will of R. H. McKay, deceased, set out in said report, that Mrs. Hattie Robinson took an estate in said lands for and during her natural life and at her death to her child or children should she leave a child or children surviving her, and that by reason of the fact that no provision was made as to vesting of title in the event she left no child or children surviving, the

terms of the devise would operate to leave the fee in the said Mrs. Hattie Robinson, so that any disposition of said property made by her during her lifetime would be a valid conveyance of the fee in the event no child or children survived her, and it is so ordered, adjudged and decreed by the court.

"It further appears to the court that while under a proper construction of said item of said will the heirs at law of the said Mrs. Hattie Robinson and the heirs at law of R. H. McKay, deceased, took and could take in any event no interest in said property, they executed such a conveyance as set out and referred to in the report of the Clerk and Master as did and would forever estop and bar them from making any claim whatever to said property under said will, and it is so ordered, adjudged and decreed by the court.

"It further appears to the court that by virtue of process served upon Mrs. Hattie Robinson under the theory of virtual representation that all parties in esse or in posse who have or might have any interest in said property, vested or contingent, are properly before the court, and it is so ordered, adjudged and decreed by the court.

"It further appears to the court that by virtue of the transfers set out in said report that complainant W. H. Barnett and wife Addie Myrtle Barnett are seized with the fee in said property subject only to be defeated when and if the said Mrs. Hattie Robinson might die leaving a child or children, and it is so ordered, adjudged and decreed by the court.

"It further appears to the court that the contract of sale executed by complainants and defendant C. P. Daniel is fair and proper in its terms, that the sum of sixteen hundred dollars offered is a full, fair and adequate price, that it is manifestly to the best interest of all parties concerned that said contract of sale be ratified and confirmed by the court, it is so ordered, adjudged and decreed by the court.

"And it is further ordered, adjudged and decreed by the court that upon the payment by said C. P. Daniel of said sum of sixteen hundred dollars into the hands of the Clerk and Master, all the right, title, claim and interest of W. H. Barnett and wife Addie Myrtle Barnett, Mrs. Hattie Robinson, and all other parties or persons in esse or in posse who have or might have any interest, vested or contingent, in the tract of land described in the report, be divested out of them and each of them and vested in the C. P. Daniel as an absolute estate in fee simple, and all the rights and interests of said persons or parties in esse or in posse will thereafter attach to the fund arising from the proceeds of the sale of said land instead

of in the land itself, leaving said land free, clear and unincumbered of any and all claims.

"Upon the payment of the sum mentioned the Clerk and Master will execute, acknowledge and deliver a deed to said property to the said C. P. Daniel, taxing the cost thereof with the costs of the cause.

"From the funds in hand the Clerk and Master will pay the costs of the cause, including a fee of $————— to Wirt Courtney, solicitor for complainants, and the remainder will be held subject to the orders of the court; and until further orders the Clerk and Master is directed to lend same out at interest, paying the interest to W. H. Barnett and wife Addie Myrtle Barnett as it accrues, and should said sum be loaned to said W. H. Barnett and wife Addie Myrtle Barnett upon security same will be loaned to them without interest until further orders of the court.

"To all of the foregoing decree defendant C. P. Daniel excepts and prays an appeal to the present or next term of the Court of Appeals at Nashville, which appeal is granted and defendant is allowed 30 days within which to execute and file proper appeal bond conditioned as provided by law."

Defendant Daniel perfected his appeal and has assigned errors here, through which he is insisting that the decree of the Chancellor was ineffective to vest in him an absolute and indefeasible title in fee simple, for the reason, he asserts, that the possible contingent remaindermen under the will of R. H. McKay are not represented in the cause.

Complainants stated in their bill that "defendant Mrs. Hattie Robinson is sued individually and as a representative of that class of persons that might have or take some contingent interest in the property described."

One of the matters concerning which the Master was directed to report was whether or not all of the various parties with contingent or other interests in the parcel of land described in the bill were "duly before the court." In response to this feature of the reference, the Master reported as follows: "Mrs. Hattie Robinson is duly before the court by service of process, and under the theory of virtual representation I report that all parties having any interest, vested or contingent, are properly before the court."

However, the concurrent finding of the Master and Chancellor on this point does not conclude the parties, for the reason that it is a conclusion of law upon undisputed facts. Gibson's Suits in Chancery (3 Ed.), Sec. 620.

It is necessary, therefore, to determine whether, under the doctrine of virtual representation, any children which may hereafter

be born to Mrs. Hattie Robinson would be bound by the decree in this case.

Mrs. Hattie Robinson is fifty-six years of age and has never had a child; hence, according to the usual course of nature, the possibility that she will ever bear children is remote; but, in contemplation of law, the possibility of issue is never extinguished until death. Bigley v. Watson, 98 Tenn., 353, 360, 39 S. W., 525; Jordan v. Jordan, 145 Tenn., 378, 413, 239 S. W., 423. This rule is too firmly imbedded in the law to be ignored, and, for the purposes of this case, we must accept it, with all its consequences.

"The general rule in equity, in accordance with the fundamental principles of justice, is that all persons interested in the object of a suit and whose rights will be directly affected by the decree must be made parties to the suit. Exceptions to this rule have been admitted, from considerations of necessity · or of paramount convenience, when some of the persons interested are out of the jurisdiction or not in being, or when the persons interested are too numerous to be all brought in. But in every case there must be such parties before the court as to insure a fair trial of the issue in behalf of all." McArthur v. Scott, 113 U. S., 340, 28 L. Ed. 1015, 1031.

"As an exception to the rule that all persons having an interest in the subject-matter of an equity suit must be made parties, the doctrine of virtual representation, which originated at an early date, recognizes the right of a few persons to sue for themselves and all others similarly situated. Under this doctrine, the persons who are not joined by name as parties are in a sense before the court. They have been called quasi-parties, and have even been said to be parties in substance and legal effect. In all cases to which the doctrine of representation applies there must be joined as parties persons who fairly represent the interest or right involved so that it may be tried fairly and honestly. It is sufficient if the parties before the court enable it fairly and fully to adjudicate the question involved. The parties represented must have a common interest with those before the court, and consequently the parties before the court cannot act as representatives if their interests are antagonistic to those who would be represented. The most frequent application of the doctrine of virtual representation is to members of a class. . . . This doctrine has also been applied in suits relating to property in which an interest has been given to persons not in esse. In such cases the owners of the prior estate are generally held to represent the contingent interest of the unborn persons. . . . The representation in such a case must be real and must be by parties who have an interest to support the rights of the persons not in esse. . . . And in all such cases,

care must be taken that persons are brought on the record fairly representing the interest or right involved, so that it may be fully and honestly tried." 20 R. C. L., pp. 669-671, sec. 9.

The rule of virtual representation has been adopted and frequently applied in this State.

In Freeman v. Freeman, 9 Heisk., 301, it was sought to have certain lands sold for purposes of partition and the bill was maintained with a life tenant and one of the same class with unborn remaindermen before the court as representatives of the latter class.

In Parker v. Peters, 2 Shan. Cas. 636, there was a devise to daughters of the testator during their natural lives, with remainder to their children. The two daughters of the testator, with their husbands, and the only living child of one of the daughters, were parties. It was held that unborn children of the daughters were bound by the decree for the sale of the property.

In Ridley v. Halliday, 106 Tenn., 607, the life tenant, who had never been married, was held to be a fit representative of the unborn remaindermen (his children) in a suit to sell the land for reinvestment. (61 S. W., 1025, 53 L. R. A. 477, 82 Am. St. R., 902.)

In Rutherford v. Rutherford, 116 Tenn., 383, 389, 92 S. W., 1112, it was said that remaindermen in esse may represent remaindermen of the same class in posse.

In Realty Co. v. Andrews, 128 Tenn., 725, 735, 164 S. W., 1175, a valid decree for a sale of land for reinvestment was made where the trustee holding the legal title, the life tenant, and two of the life tenant's children in whom the remainder would become a vested estate if the life estate then fell in, were parties to the cause.

In the case last cited the court, in the midst of its opinion, said: "The doctrine of virtual representation is thoroughly established in Tennessee. It is well settled that contingent limitations and executory devises to persons not in being, or uncertain and indeterminable at the time of the proceedings, may be bound by a decree against the person then claiming the vested estate. In suits to enforce a trust, or with reference to trust property, so limited in remainder, if the holder of the legal title, the life tenant, and the persons in being in whom the remainder would become a vested estate if the life estate then fell in—if all these are parties, a valid decree may be pronounced."

In Jordan v. Jordan, 145 Tenn., 378, 415, 239 S. W., 423, it was held that the chancery court had power to decree a sale of land where the life tenant and four of her children, in whom the remainder would become a vested estate if the life estate then fell in, were before the court representing not only themselves but unborn remaindermen (children of the life tenant).

Numerous cases from other jurisdictions are cited and many of them reviewed in the Tennessee cases before cited, particularly in Ridley v. Halliday, supra, and in the last mentioned case it is directly held that "in certain cases" a life tenant may represent contingent remaindermen where no one of the latter is in esse at the time the court is called upon to intervene with regard to the estate in controversy. This was, in substance, the adoption by our Supreme Court of the rule announced by Lord Redesdale in a leading English case of Gifford v. Hort, 1 Schoale & Lefroy, 386, 408; and in 1 Freeman on Judgments (5 Ed.), sec. 490, at page 1058, dealing with this particular phase of the doctrine of virtual representation, it is said: "The views of Lord Redesdale are sustained by a majority of the reported adjudications on this subject. Though, of course, where the life tenant's interests are adverse he cannot represent subsequent contingent interests."

And in Ridley v. Halliday, supra, the court said, in substance, (at page 613), that the doctrine of virtual representation is based upon the assumption that the living representative will look after the interest of the contingent remaindermen in posse by bringing to the attention of the court the merits of the controversy, so far as they affect such unborn remaindermen.

It will be remembered that, by her deed of October 13, 1919, to Fred Barnett, Mrs. Hattie Robinson divested herself of all semblance of title to the property here involved, and she is now without any pecuniary interest therein.

In the case of Downey v. Seib, 185 N. Y., 427, 78 N. E., 66, 8 L. R. A. (N. S.) 49, it was held (as stated in the headnote) that, "a deed giving a life estate with remainder to the children of the life tenant, and to her brothers and their children, cannot, after a conveyance by the brothers to the life tenant of their interests by warranty deed, and before the birth of any children, be reformed so as to vest a fee in the first taker, since there is no one to represent the interests of the unborn children."

The case just cited is copiously annotated,—having appended thereto a Subject Note, covering more than seventy pages, relating to the doctrine of virtual representation, under the title of "Divestiture of Estates of Persons Not in Being." In this Note (at page 56), under the sub-title of "Who Represent the Unborn," the annotator says: "The tests of effective representation are, first, privity of estate, using the term in a broad sense, and, second, absence of conflicting interest between the unborn and the living representative."

In concluding the above mentioned note, the annotator says: "The rule plainly stated in Downey v. Seib, for extinguishing the estates in remainder of unborn persons by judicial decree, that,

before such a decree can be effective, the court pronouncing it must have had before it some party having a privity of estate with the persons not in being, to insure a fair presentation of their interests, rests upon good authority. The rule itself, indeed, is unchallenged, and there is surprisingly little conflict in the applications of it. The converse is equally settled. The interest of persons not in esse can always be divested in suits and actions well founded and regularly conducted, in which there are parties representing their own interests that harmonize, conflict not, and stand or fall, with those of the unborn.''

The fact that the contingent remaindermen, if any should be born, will be children of Mrs. Hattie Robinson does not, in law, make her a fit representative of such contingent remaindermen in posse. There is no privity of estate between parent and child merely by reason of the relation. 1 Freeman on Judgments (5 Ed.), sec. 481, page 1040. ''Mere affection resulting from relationship, without interest, does not make one person the representative of another.'' Id., sec. 490, page 1056.

Moreover, if the deed made by Mrs. Hattie Robinson to Fred Barnett contained a warranty of title, she is not only without a shred of title to the property, but she is interested adversely to the remaindermen in posse by reason of her warranty. Drake v. Frazer (Neb.), 11 A. L. R. 766, 770, 179 N. W., 393.

In the case last cited it was held that where the life tenant has, by her own act, placed herself in such a position that her interests are adverse to those of the unborn contingent remaindermen, she is not a fit or proper representative of their interests.

The stipulation of counsel for the parties which was filed in lieu of proof of the several conveyances mentioned in the Master's report does not, in terms, describe the deed made by Mrs. Hattie Robinson to Fred Barnett as a warranty deed,—the stipulation being that ''by deed dated October 13, 1919, of record in Deed Book 47, page 44, said R. O. W. C., said Mrs. Hattie Robinson conveyed said lot or parcel of land to one Fred Barnett,''—but it is stated in the brief for complainants filed in this court that Mrs. Robinson ''executed a warranty deed as though she owned the fee in the property,'' and this interpretation of the record is entirely in harmony with the reasonable inference to be drawn therefrom. Southern Pacific Railroad Co. v. Townsend, 62 Fed., 161, 164.

It is argued on behalf of complainants that, as complainants are vested with the fee, limited alone by the possibility of future birth of issue to Mrs. Robinson, the complainants ''could themselves represent all the contingent remaindermen, and a valid decree could have been pronounced by virtue of their being complainants without the necessity of making Mrs. Robinson a party.''

The contention thus made, as we understand it, is that, an application of the principles of the doctrine of virtual representation to the facts of this case would permit the complainants to be treated as representatives of the remaindermen in posse so as to bind the latter by the decree.

It is obvious that the interests of the complainants and those of the remaindermen in posse are antagonistic, as nothing stands between the complainants and an absolute and indefeasible title in fee simple, except the possibility of the birth of issue to Mrs. Robinson. The extinguishment of the contingent remainder would accrue to the benefit of the complainants. Such conflict of interest necessarily renders the complainants unfit and improper representatives of the possible unborn remaindermen.

Through an assignment of error the appellant asserts that the Chancellor erred in holding and decreeing "that under Item 2 of the will of R. H. McKay, deceased, set out in said report, that Mrs. Hattie Robinson took an estate in said lands for and during her natural life, and at her death to her child or children should she leave a child or children surviving her, and that by reason of the fact that no provision was made as to vesting of title in the event she left no child or children surviving, the terms of the devise would operate to leave the fee in the said Mrs. Hattie Robinson, so that any disposition of said property made by her during her lifetime would be a valid conveyance of the fee in the event no child or children survive her."

We think that part of the decree challenged by the assignment of error just stated was erroneous, and this assignment is sustained; but, in the light of the record facts, the question is academic, that is, it merely affects the process of reasoning by which the conclusion is reached, and is not material to the result.

We do not concur in the Chancellor's holding that "by reason of the fact that no provision was made as to vesting of title in the event she left no child or children surviving, the terms of the devise would operate to leave the fee in the said Mrs. Hattie Robinson." Our view is that the fee did not pass by the will of R. L. McKay, but at his death descended to his heirs-at-law (See Epperson v. White, 156 Tenn., 155, 165), and was later, by their deed of August 31, 1917, conveyed to Mrs. Hattie Robinson. Bigley v. Watson, 98 Tenn., 353, 363, 373, 39 S. W., 525. When the life estate and the fee thus united in the same person (Mrs. Hattie Robinson), there was no merger of the life estate in the fee which would destroy the intervening contingent remainder limited, by way of executory devise, to the unborn children of Mrs. Robinson (10 R. C. L., p. 668, sec. 29), and if Mrs. Robinson should "leave a child or children surviving her," such child or children

would take as a purchaser or purchasers "by virtue of the remainder so limited to them" in the will of R. H. McKay, and not by descent from their mother. Shan. Code, sec. 3674; Williams v. Williams, 10 Heisk., 566, 569. However, when the heirs at law of R. H. McKay conveyed their entire interest in the property to Mrs. Hattie Robinson, the effect was to vest the fee in Mrs. Robinson, subject to the contingent remainder, in fee, to her child or children, in the event she should leave a child or children surviving her. Williams v. Wiliams, 3 Baxt., 55, 59.

It is seen that the views which we entertain, as above stated, lead to the same result as the views declared by the Chancellor with respect to the status of the title of Mrs. Hattie Robinson (conveyed by her to Fred Barnett); that is to say, we do not agree that "by reason of the fact that no provision was made (in the will of R. H. McKay) as to vesting of title in the event she (Mrs. Robinson) left no child or children surviving, the terms of the devise would operate to leave the fee in said Mrs. Hattie Robinson," but our ruling that the deed made to Mrs. Robinson by the heirs-at-law of R. H. McKay vested the fee in Mrs. Robinson, subject only to the possibility of defeasance in the event she should leave a child or children surviving at her death, effects the same result.

But, for the errors pointed out in the assignments through which appellant asserts that the contingent remaindermen in posse were without representation in the cause, and the court was therefore without power and jurisdiction to make a decree with respect to the land in question which would bind them, and was therefore without power to vest in defendant Daniel a good and indefeasible title to said land in fee simple, are sustained.

We are not unmindful of the undesirable situation in which complainants are placed with respect to the marketability of their title, but "it is not within our rights to bend the law to meet hard cases. It is our duty to administer it as written." Swift & Co. v. Warehouse Co., 128 Tenn., 82, 102, 158 S. W., 480.

"The danger is, that a wrong principle established to accomplish what seems to be right in one case, may defeat right and justice in many others. All cases, therefore, must be governed by the same general rules and principles." Marr v. Marr, 2 Head 303, 312.

In a case similar to the instant case, the Court of Appeals of New York said: "While in this case, as we feel well assured, there was neither furtive motive nor evil result in the judgment of reformation, still, if we sustain the position of the plaintiff, our adjudication will declare the law to govern all cases of like character arising hereafter, and the next to come before us may involve the robbery of children by a judgment rendered before they were born,

with no one to represent or defend them. A general rule, established by the decision of a question of law, is much more important than the effect in a particular case." Downey v. Seib, supra, p. 58.

It results that the decree of the chancery court is reversed and the complainants' bill is dismissed, and a decree will be entered accordingly. The costs of the cause, including the costs of the appeal, will be adjudged against the complainants and their surety for costs.

Crownover and DeWitt, JJ., concur.