FRED W. FIENHOLD *et al.* Appellees, *vs.* JOSEPH S. BAB-
COCK, SR., *et al.*—(MAY H. BABCOCK, Appellant.)

*Opinion filed October 24, 1916.*

1. APPEALS AND ERRORS—*when purchaser at master's sale may
appeal to Supreme Court from order to pay purchase price of land.*
Where the purchaser at a master's sale, who is not a party to the
foreclosure proceeding, refuses to pay the balance of her bid be-
cause of alleged defects in the proceeding which might affect the
validity of her title, she may, on the ground that a freehold is in-
volved, appeal to the Supreme Court from an order of the circuit
court compelling her to pay the balance of her bid.

2. MORTGAGES—*what is the proper practice where purchaser re-
fuses to pay balance of bid at a foreclosure sale.* Where the pur-
chaser of land at a foreclosure sale refuses to pay the balance of
her bid it is proper practice for the trial court summarily to re-
quire her to pay the same, provided the master's deed conveys a
good title.

3. SAME—*when validity of loans secured by trust deeds on in-
fant's land cannot be questioned.* Where a father, as guardian of
his minor children, secures loans by trust deeds upon their land
to procure funds for their education, the validity of these loans
cannot be questioned in a collateral proceeding by a third party on
the ground that it was the father's legal duty to support his chil-
dren and that he had no right to borrow the money on their land.

4. SAME—*when the court may order sale of a portion of land
free from equity of redemption.* In a proceeding to foreclose trust
deeds upon the lands of minors made to secure loans for their edu-
cation, if it is clear the minors have no property other than the
land and that they may lose the whole inheritance if the land is
offered for sale subject to the intervening life estate, the court
may, in the exercise of its jurisdiction over infants and with the
consent of the life tenant, order a sale of enough of the land, with-
out equity of redemption, to pay the mortgages.

5. EQUITY—*courts of equity have plenary jurisdiction over es-
tates of infants.* Courts of equity have plenary jurisdiction over
the estates of infants, and in exercising that jurisdiction may
cause to be done whatever may be necessary to preserve their es-
tates and protect their interests.

6. SAME—*equity has power to protect contingent interests of
persons not in esse.* The fact that persons may be born in the
future who may in a certain contingency have an interest in land

owned by minors does not preclude a court of equity, in order to save part of the land for the minors, from ordering a sale, on foreclosure, of a portion of the land free from all claims, as the court has power, by proper provisions in the decree, to protect the interests of persons not *in esse.*

7. NOTICE—*rule in construing sufficiency of notice in chancery proceeding.* In construing notice in a chancery proceeding the real question is not whether the notice is formally and technically correct but whether the object and intent of the law are substantially attained thereby.

APPEAL from the Circuit Court of Livingston county; the Hon. G. W. PATTON, Judge, presiding.

H. G. GREENEBAUM, for appellant.

H. E. TORRANCE, TUESBURG, WILSON & ARMSTRONG, GUY L. LOUDERBACK, guardian *ad litem,* and E. A. SIMMONS, for appellees.

JAMES T. TERRY, *pro se.*

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal by May H. Babcock, the purchaser at a master's sale held under a decree of the circuit court of Livingston county, from an order of that court that she pay to the master in chancery the balance of her bid at said sale and interest thereon, and that in default of such payment execution should issue against her therefor.

March 10, 1899, Joseph S. Babcock, Sr., was the owner in fee simple of about 320 acres of land in Livingston county, subject to the dower right of his mother, Mary O. Babcock. On that date, his wife and mother joining with him, he gave a trust deed to Ogden P. Bourland on 160 acres of said land to secure a note of $5000. About two years later said Joseph S. conveyed said land, subject to said trust deed, to his mother. In 1903 the mother, Mary O. Babcock, died leaving a will, whereby she devised a life interest in said 320 acres to her son, said Joseph S., and

provided further that "after his death I give, devise and be-
queath said lands in fee simple to the children of said Jo-
seph S. Babcock, share and share alike, and should any
child of said Joseph S. Babcock die leaving children or de-
scendants of children, such descendants shall take the share
of the parent." At the time of these proceedings in the
trial court said Joseph S. Babcock, Sr., had four children,
namely, Mary K., Joseph S., Jr., Bertha A. and Edward R.
During their minority he acted as their guardian, having
been appointed by the county court of Livingston county.
Under leave of that court he extended the indebtedness
secured by said trust deed five years, and also executed a
note for $1200, individually and as guardian on behalf of
said children, secured by another trust deed to Ogden P.
Bourland on the same 160 acres of land covered by the
first trust deed. These two notes came into the ownership
of Fred W. Fienhold, conservator of Rebecca Converse.
Thereafter, by leave of the county court, these two trust
deeds were extended to March 1, 1914. In October, 1908,
Joseph S. Babcock, Sr., by leave of the county court, exe-
cuted a note, individually and as guardian, for $5000, secur-
ing the same by trust deed to J. M. Lyon on the 160 acres
of said land not included in the other two trust deeds. This
last named $5000 note became the property of the Savings
Bank of Peoria. This loan was given to take up a trust
deed of $5000 executed October 4, 1903, by said guardian
under leave of the county court, which last mentioned trust
deed appears to have been given for the purpose of taking
up a still earlier incumbrance and for the support and edu-
cation of said minors. In August, 1911, Mary K. Babcock,
then of age, quit-claimed her interest in said real estate to
her father. Later, in January, 1912, individually and as
guardian of the three minors, he gave a trust deed to D. S.
Myers on said 320 acres of land to secure a note of $4000.
At the time of the hearing said land was leased to the
Lewis McMurray Packing Company for a term ending

March 1, 1918, for an annual rental of $2700.  On April 11, 1914, said Bourland as trustee and said Fienhold as conservator filed a bill in the circuit court of Livingston county asking for a foreclosure of the two trust deeds in which they were interested.  A guardian *ad litem* was appointed for the minor children and answered in the usual form.  A cross-bill was thereafter filed by said guardian, which set forth that said three minors were then the owners of an undivided three-fourths interest in said 320 acres of land, subject to the life estate of their father and to the provisions of the will of their grandmother as to afterborn children, and also subject to the various trust deeds and incumbrances heretofore set forth.  In addition to the incumbrances already referred to there seem to have been at that time certain small liens against various interests of the father and children in said land, amounting to something less than $200.  The cross-bill further represented that on account of the fact that the father had the life use of the land and said minors had no other property, no way existed in which said incumbrances and interest thereon could be taken care of except by the land itself, and that therefore they, through said guardian *ad litem,* prayed the court to authorize the master in chancery to sell outright enough land, free and clear of all liens and without equity of redemption, to clear up the incumbrances against the entire 320 acres.  After the issues were joined the case was referred to the master in chancery, who reported recommending that the complainants were entitled to foreclosure as prayed in the original bill, but that if Joseph S. Babcock, Sr., and his adult daughter, Bertha A., would assent thereto, there should be a public sale of 80 acres outright, free from all incumbrances and without equity of redemption, to furnish proceeds sufficient to be used in paying the incumbrances on the whole 320 acres.  The court thereafter entered a decree, which, as finally modified, found that said Joseph S. and Bertha A. Babcock would consent

to the sale of their interests, and that the master in chancery should sell outright 120 acres of said land, free from incumbrances and without equity of redemption, and should use the proceeds thereof to pay off said incumbrances, costs and charges. The master thereafter reported that the sale had been held as ordered by the decree, and that 120 acres of said land were sold to May H. Babcock, appellant herein, for $19,200. She paid down ten per cent at the time of the sale, but when the time came to pay the remaining ninety per cent she failed to do so. On being ruled to show cause why she should not be required to pay the same she filed an answer alleging that the court was without jurisdiction to order the sale of said real estate, and particularly that it was without jurisdiction as to the defendants Joseph S. Babcock, Jr., and Mary K. Babcock, on account of irregularity in the service; that the proceedings were irregular and void and that she would not obtain by the master's deed a good title; that she had applied for a loan on the premises and her application was refused on the ground that her title would not be good; that the ten per cent paid to the master ought to be returned to her and the sale declared null and void. The court, after a hearing, ruled that she should pay to the master the remaining ninety per cent of the purchase price, and interest, within twenty days, and that on failure to do so execution should issue against her. Thereupon she perfected this appeal.

The case was properly brought direct to this court, as a freehold was involved. (*Schulz* v. *Hasse,* 227 Ill. 156; *Wakefield* v. *Wakefield,* 256 id. 296.) Under the reasoning in the case last referred to, the trial court followed a proper practice in requiring the bidder summarily to pay her bid if the master's deed conveyed to her a good title. (See, also, 12 Ency. of Pl. & Pr. 65; 24 Cyc. 45, and cases cited.)

Counsel for appellant, while not, in terms, questioning the jurisdiction of the circuit court as to the subject mat-

ter, apparently by indirection raises the question by insisting that it was the duty of the father, under the law, to maintain and educate his minor children. The argument on this point, as we understand it, is, in effect, that the loans, and the trust deeds securing the same, were improperly authorized by the county court and that therefore these proceedings are without authority. It may be conceded that it was the legal duty of the father to support the minor children if he was able to do so, but counsel has cited no authority, and we know of none, which would permit appellant, under circumstances such as here shown, to question the validity of the loans in question. There is no satisfactory proof in the record, even though it were competent in this proceeding, to show that the father was able to maintain and educate his children. No showing of any kind is made or any authority cited tending to prove that the loans secured by the mortgages were not duly and properly authorized by the county court. A suit to foreclose these mortgages was rightly instituted, and it is clear that the minors had no other property or resources to resort to in order to prevent foreclosure. Manifestly, therefore, unless some steps out of the ordinary were taken they might lose their whole inheritance. With this situation before it the trial court exercised its undoubted equity jurisdiction over the property of the minors and entered the decree of sale of the 120 acres of land here in question. This court has frequently stated that courts of equity have plenary jurisdiction over the estates and persons of infants, and in exercising that jurisdiction may cause to be done whatever may be necessary to preserve their estates and protect their interests. (*Chapman* v. *American Surety Co.* 261 Ill. 594, and cited cases.) The trial court's finding that it was for the benefit of the minors to enter the decree in question is amply supported by the facts in this record. The only question that can be raised here is whether all necessary

parties were before the court at the time the decree was entered.

Counsel argues that under the will of Mary O. Babcock a contingent remainder in this property was left to the children of Joseph S. Babcock, Sr., and that even though persons not yet *in esse* might be bound if the necessary parties were brought into court, still in such case the pleadings must ask for such action by the court and the decree must make provision for their protection by substituting the funds derived from the property and preserving it to the extent necessary to satisfy such interests if they thereafter arise. We do not deem it necessary to pass on the qustion whether, under said will, said children received a vested remainder, subject to open up to let in the interests of after-born children, or whether the remainder was contingent. In any event, those who were not actually before the court in this case must be held to be bound by the doctrine of representation. As was said by this court in *Hale* v. *Hale,* 146 Ill. 227, that doctrine is especially applicable "where the persons not before the court are only possible parties not *in esse,* and where the interests of all parties in being require a decree which will completely and finally dispose of the subject matter of the litigation. Such possible parties cannot, as a matter of course, be brought before the court in person, and it would be highly inconvenient and unjust that the rights of all parties in being should be required to await the possible birth of new claimants until the possibility of such birth has become extinct. If persons in being are before the court who have the same interest and are equally certain to bring forward the entire merits of the question, and thus give such interests effective protection, the dictates both of convenience and justice require that there should be a complete decree." (See, also, to the same effect, *Hopkins* v. *Patton,* 257 Ill. 346; *Thompson* v. *Adams,* 205 id. 552; *Denegre* v. *Walker,* 214 id. 113; *Temple* v. *Scott,* 143 id. 290.) It would, indeed, be

a strange doctrine to hold that a court of equity could not preserve the interests of the minors in this property and give legal title to a part of the land in order to save the balance, because certain persons not now *in esse* might possibly in the future have some interest in the land. Such a holding would certainly be detrimental to the unborn children if it resulted in losing the entire estate in which such after-born children might possibly have an interest. There is, however, ample authority, as we have seen, for the holding we have made on this point. But even if there were not, the jurisdiction in equity does not depend, alone, on precedent. (*Gavin* v. *Curtin*, 171 Ill. 640.) As was said in the case cited, a court of equity will not suffer a right to exist without a remedy. There, as here, there was a mortgage on premises from which there was no income. There, as here, there was a title subject to certain contingencies. There, as here, the whole inheritance was threatened and the court asserted its equity jurisdiction in order to save a part of the inheritance. Moreover, the original decree herein provided that the master in chancery should hold all such moneys received from the proceeds of such sale to await the further order of the court. When the trial court proceeds to enter a decree as to the distribution of such money, it can protect the interests of persons not *in esse* in that portion of the proceeds which shall remain after paying the loans secured by the trust deeds and the costs and such other proper charges as the court shall order paid out of such proceeds.

Counsel for appellant argues that jurisdiction of one of the necessary defendants was not properly obtained under a certain affidavit for publication. He also insists that there was a defect in a published notice as to certain of the defendants, and that therefore these parties were not properly before the court. This court has held that in construing notices in chancery proceedings the real question is, and should be, not whether the notice is formally and tech-

nically correct, but whether the object and intent of the law were substantially attained thereby. (*Gage* v. *People,* 223 Ill. 410, and cases cited.) We think the published notice complained of was sufficient under these authorities. The title which the purchaser, May H. Babcock, will receive under the deed from the master, as directed by the decree of sale, will be good as against all persons designated in the bill of complaint herein as defendants, and also as against all persons not *in esse* who might claim under the will of Mary O. Babcock.

The order and decree of the circuit court will therefore be affirmed.

*Decree affirmed.*