(No. 11680.—Decree affirmed.)

MINSHALL DOLE, Appellant, *vs.* HOMER E. SHAW, Appellee.

*Opinion filed February 20, 1918—Rehearing denied April 3, 1918.*

1. GUARDIAN AND WARD—*county court may authorize guardian to mortgage ward's land to secure loan for support of ward.* Under the statute authorizing the county court, on petition of a guardian, to sell the real estate of the ward for his support and education, the court may authorize the guardian to mortgage the ward's land to secure a loan for the same purpose.

2. SAME—*when decree of sale of ward's real estate cannot be attacked in a collateral proceeding.* A decree of the county court having jurisdiction to sell the real estate of a ward upon petition of his guardian cannot be attacked in a subsequent proceeding for the enforcement of a contract to convey the same land, but ·said decree can be attacked only in a direct proceeding by appeal or writ of error.

3. SAME—*when guardian's interest will not invalidate sale of wards' real estate.* Where a guardian petitions for the sale of his wards' interest in real estate, which consists of the remainder after a life estate in their father, who has agreed with the guardian for the sale of his interest, the fact that the guardian is reimbursed from the proceeds of the sale of the life estate, which he held as security for advancements to the father, and is paid from the same proceeds for his conveyance of other land to the father pursuant to the agreement, will not invalidate the decree of sale.

4. JUDICIAL SALES—*when land in which parties not in being will have an interest may be sold.* Land in which persons not in being will have an interest when they come into being may in a proper case be sold free from any such claim or interest if their interests are identical with the interests of those in being, who are all made parties to the suit, but the decree of sale must protect the interests of parties not in being in the proceeds of the sale.

5. Same—*effect where decree of sale does not protect interests of unborn children.* Where a decree of sale does not protect the interests of unborn children in the proceeds of the sale, after the birth of said children they may, at any time during their minority or within the period allowed by law after arriving at majority, prosecute a writ of error to reverse a decree finding, in a suit to quiet title, that their interests were divested by the decree of sale; but in a collateral proceeding the decree quieting title is conclusive as to all adult parties.

Appeal from the Circuit Court of Piatt county; the Hon. George A. Sentel, Judge, presiding.

R. G. Real, for appellant.

Carl S. Reed, for appellee.

Mr. Justice Farmer delivered the opinion of the court:

Appellant, Minshall Dole, filed his bill in the circuit court of Piatt county to enforce the specific performance of a written agreement for the sale of 160 acres of land in Douglas county, Illinois. By the written instrument appellant agreed to sell, and appellee, Homer E. Shaw, agreed to buy, the land. The consideration expressed in the contract was $32,000, part of which was to be paid by appellee conveying to appellant a brick barn in Bement, Illinois, which appellant agreed to accept in payment of $8000 of the purchase price. The balance was to be paid in money, viz., $3000 when appellant furnished appellee an abstract showing good merchantable title in appellant to the 160 acres, and the balance on or before March 1, 1917. Appellee agreed to furnish an abstract showing good title in him to the Bement property. No objection was made by appellant to the title to that property, but appellee objected to the title of appellant to the 160 acres of land as shown by the abstract and refused to perform the agreement on the ground that the abstract did not show merchantable title in appellant. The bill in this case was filed by appellant to enforce

the performance of the agreement by appellee. Upon the hearing the court dismissed the bill for want of equity.

It seems necessary to an understanding of the questions involved that a history of appellant's title be given. The land formerly belonged to Cornelius McCumber. February 11, 1895, Cornelius McCumber and wife conveyed the land to Charles T. McCumber, son of the grantor, for and during the grantee's natural life with remainder to the children of the grantee. The grantor reserved to himself a life estate in the land. Cornelius McCumber died in December, 1907, but as we understand it Charles T. McCumber went into possession of the land in 1895, and he and his family remained in possession until it was sold at a guardian's sale, in September, 1914, to William M. Checkley. Charles T. McCumber appears to have met with a series of misfortunes prior to 1910 which involved him heavily in debt. He mortgaged his life estate in the 160 acres to John Funk to secure a loan of $1000. He also mortgaged his personal property to Frank K. Pierce to secure $2000. Subsequently McCumber and his wife made a deed to Pierce conveying McCumber's life estate to him. Pierce began proceedings to dispossess McCumber of the land. Thereupon McCumber filed a petition in the county court of Douglas county to the December, 1910, term, setting up his misfortunes and the debts incurred on account thereof, that he was unable to feed and clothe his children and that he was about to be put out of his home. In his petition he asked to be appointed guardian of his six children, the oldest being fifteen years of age and the youngest two years; also that he be authorized to mortgage his and the children's interest in the land to secure a loan of $5000 to enable him to extricate himself and family from their financial difficulties and preserve the land as a home. An order was entered appointing him guardian and authorizing him to make the loan. In February, 1911, McCumber filed another petition in the county court of Douglas county reciting at some length his mis-

fortunes and stating that he was unable to secure the loan of $5000 on the land; that he had employed attorney Emery Andrews and made an arrangement with him whereby Andrews had advanced to Pierce, who then held title to the McCumber life estate and a mortgage on his personal property, $2000 to satisfy McCumber's indebtedness to Pierce; that to reimburse Andrews and pay for his services and expenses and other indebtedness and to protect the property would require in the neighborhood of $5000. McCumber resigned as guardian of his children and asked that Andrews be appointed guardian instead and authorized to borrow the money for the purposes set forth in the petition. Andrews was appointed such guardian upon filing bond in the sum of $5000, and it was ordered that he, as such guardian, be authorized to borrow $5000 on the interest of McCumber and his children in the land and pay the money out as directed in the order. In April, 1912, Andrews filed a report in the county court, in which he stated he had only been able to borrow $2500 on the land; that by securing discounts from creditors on their claims he had been able to reduce the indebtedness to between $1300 and $1400. He further reported twin children had been born to McCumber and wife, who had an interest in the remainder of the land, and asked to be appointed their guardian, and was so appointed. In March, 1914, Andrews filed a report and an elaborate petition setting out the former proceedings in the county court and the destitute condition of the McCumber family, and stating that it would be necessary to borrow $4000 on the land for the protection of the property for McCumber and his family, $2500 of the $4000 to be used in paying off the former loan. The court entered an order reciting that the minor children of McCumber reside in Douglas county, Illinois; that they were duly served with notice by the sheriff of said county; that to carry out the purpose for which the $2500 was borrowed and pay all fixed charges, taxes and insurance necessary to preserve the land

to the children a loan of $4000 was required, and the guardian was authorized to make such loan and mortgage the land to secure it; that out of the proceeds of the loan he pay off the $2500 mortgage and from the residue pay the remainder of the debts. As we understand it, Andrews was unable to find anyone who would loan $4000 and take a mortgage on the land as security, so McCumber and his wife, and Andrews as guardian, executed a note and mortgage to a man by the name of Richmond, as trustee, which Andrews used as collateral to borrow the money himself from a bank. Some time in May, 1914, it appears an agreement was made between McCumber and Andrews which stated that up to that time Andrews had advanced money for the payment of debts and liabilities of McCumber and rendered services amounting in all to $4521.89, which he was unwilling to carry longer. It was agreed, in consideration of said indebtedness and the conveyance by Andrews to McCumber of a half section of land in Dakota, valued at $6400, which conveyance was to be made as soon as the McCumber 160 acres of land should be ordered sold by a proper order of the county court, that McCumber would release to Andrews all his right, title and interest in his life estate in the said land. Andrews was to proceed at once to file a petition in the county court, as guardian of the McCumber children, to sell the land for the maintenance and support of the children, and also the life estate of McCumber, which was then in Andrews, and out of the proceeds pay the indebtedness due him and costs and expenses of the sale, also pay Andrews $6400 for the Dakota land, and the residue of the proceeds of the sale was to be held by Andrews, as guardian of the McCumber children. Andrews, as guardian of said children, filed a petition in the county court of Douglas county to the July, 1914, term of said court, to sell the life estate and the remainder belonging to the children to reimburse him for money which he had advanced for their support and education and to create a fund

for their support and maintenance. The petition recited at length the history of the former proceedings, dealings and transactions with the land, the misfortunes and reverses of McCumber, which it was claimed made it advisable for the best interests of the children that the land be sold. Summons was issued out of the county court and served upon the children, and a guardian *ad litem* was appointed for them, who filed a formal answer. The court entered an order for the sale of the land. The guardian advertised the date and place the sale would be held, and the land was sold to William M. Checkley at public sale for $20,000, $12,000 of which was paid in cash and $8000 secured by note and trust deed on the premises, the note bearing six per cent interest per annum and due in five years from date. The guardian reported the sale to the county court and it was approved. In the decree for sale the court found that McCumber was forty-three years old, that his life estate was 62.136 per cent of the value of the land, and that the remainder was 37.864 per cent of the value of said land. After McCumber had been paid the value of his life estate from the proceeds of sale, $6400 of which was paid to Andrews for the Dakota land and the balance being represented by his indebtedness to Andrews, there remained $8000 for the children as the value of the remainder in the land. After Checkley had bought the land he endeavored to secure a loan on it, but was unable to do so because of objections to his title. The principal objection, as we understand it, was on account of supposed rights of children who might hereafter be born to McCumber, in the remainder. Checkley filed his bill to the October, 1915, term of the Douglas county circuit court to quiet his title. McCumber, his wife, his children, and Andrews as guardian, were made parties defendant to the bill. All were personally served and the adult defendants were defaulted. A member of the bar of Douglas county was appointed guardian *ad litem* for the McCumber children and filed an answer

on their behalf. A decree was entered reciting the proceedings in the county court, stating that said court had jurisdiction of the parties and of the subject matter; that the sale was made to prevent the foreclosure of a mortgage on the land, whereby the children would have lost their remainder, and for the purpose of saving something out of said land for their maintenance and support; that all the living children of McCumber were parties to the proceeding for the sale of the land, and that their interest, as well as the interest of any children McCumber might thereafter have, was disposed of by said proceeding and is now vested absolutely in the complainant in the bill, William M. Checkley. The title to said land was quieted and confirmed in Checkley.

Three questions are presented and argued in the briefs: (1) Did the county court have jurisdiction to order the sale of the premises? (2) Were the rights of unborn children of Charles T. McCumber, if any, in the premises, divested by the proceedings had in the county and circuit courts of Douglas county? (3) Was delivery of the deed to Charles T. McCumber made in the grantor's lifetime?

The chancellor found the appellant did not have a merchantable title and dismissed the bill on the ground that the unborn children of Charles T. McCumber, if any, had not been divested of their interest in the land by the proceedings had in the county and circuit courts of Douglas county.

Appellee contends that the county court did not have jurisdiction to order the land sold, and that the decree of sale for that reason is subject to collateral attack. The statute (Hurd's Stat. 1916, chap. 64, sec. 28,) authorizes the county court, on petition of the guardian, to sell the real estate of the ward for his support and education when the court shall deem it necessary, or to invest the proceeds in other real estate, or for the purpose of otherwise investing the same. For the same purposes the county court may

authorize a guardian to mortgage his ward's land to secure a loan. (*Fienhold* v. *Babcock,* 275 Ill. 282.) If the county court erred in the exercise of that jurisdiction that would not render the decree void. It could only be attacked by a direct proceeding by appeal or writ of error. Whatever may be thought of the sufficiency of the reasons upon which the court acted in decreeing the sale, we are of opinion the decree is to be treated as a valid and binding decree in this proceeding. Neither do we think there was such a conflict between the guardian's private interest and his duty to his wards as to invalidate the sale. It does not appear that he used his wards' estate for his individual profit. He entered into an agreement with Charles T. McCumber before the decree for sale, that when a sale was decreed and made from the value of McCumber's life estate, which was then held by the guardian as security for money advanced, McCumber was to receive in payment the release of the indebtedness to the guardian and $6400 to be paid by the guardian conveying to him a half section of land in North Dakota. None of the money received by the guardian, as we understand it, came out of the wards' interest.

The only other question for our review is whether, if other children should be born to Charles T. McCumber, they would have an interest in the land or whether their interest was barred or divested by the decree of the circuit court.

There is no doubt that land in which persons not in being will have an interest when they come into being may, in a proper case, be sold free from any such claim or interest if the interests of those in being are identical with the interests of those not in being and all those in being are made parties to the suit. Those not in being are held bound on the doctrine of virtual representation when proper provision is made for the protection of their interests. This is said to be a rule of convenience and almost of necessity. (*Gavin* v. *Curtin,* 171 Ill. 640.) *Downey* v. *Seib,* 185 N. Y.

427, is also reported in 8 L. R. A. (N. S.) 49, with an exhaustive note by the editor. The author of the note sums up his conclusion from a review of the cases referred to in the note, in the following language: "The controlling principle in cases of the sale of lands in which after-born persons may come to have an interest, which makes special statutes, judgments or decrees under which such sales are made conclusive and the sales effectual to extinguish the claims of the unborn and to pass title unassailable, is that of transfer of the interests from the land to its proceeds and an adequate provision for the preservation of the latter until the happening of the event which entitles the after-born persons to assert and realize their claims." This conclusion is sustained by the decisions. In *Monarque* v. *Monarque*, 80 N. Y. 320, the court said: "A judgment and sale in partition may conclude contingent interests of persons not in being; but this is only in cases where the judgment provides for and protects such interests by substituting the fund derived from sale of the land in place of the land and preserving it to the extent necessary to satisfy such interests as they arise." In a later case (*Kent* v. *Church of St. Michael,* 18 L. R. A. 331,) the New York Court of Appeals reiterated the rule announced in *Monarque* v. *Monarque, supra,* and said: "The rights of persons unborn are sufficiently cared for if, when the estate shall be sold under a regular and valid judgment, its proceeds take its place and are secured in some way for such persons." Many other cases to the same effect will be found cited in the opinions in those cases, and in *Ridley* v. *Halliday,* 106 Tenn. 607; 82 Am. St. Rep. 902.

In *Hale* v. *Hale,* 146 Ill. 227, a decree was entered for the sale of real estate by trustees under a will, in which after-born children would have an interest. All living persons interested were made parties. The decree found that a sale of the land was for the best interests of all the persons who then were or might be interested, and the proceeds

of the sale were ordered held by the trustees under the will in place of the land and invested subject to the same trusts upon which they held the land before the sale. This court held: "The rights of those *in esse* and those not *in esse* are protected by the decree in precisely the same way and to the same extent. In case of neither are those rights defeated or denied but they are expressly affirmed, the effect of the decree being to authorize the conversion of the lands in this State into personal property, and when such conversion is made it merely transfers the equitable rights of all these residuary beneficiaries from the lands to the fund which will be created by their sale. In all this the grandchildren not *in esse* have been fully represented and their rights have been fully defended and protected by those in being. The decree, therefore, must be held to be valid as a conclusive disposition of the rights of all the beneficiaries, as well those not *in esse* as those who were made defendants to the bill by name." That case was cited and quoted from with approval in *Fienhold* v. *Babcock, supra.*

The decree of the county court recites the cause came on to be heard upon the petition of the eight children of Charles T. McCumber, (naming them,) by their guardian, and recites at great length the circumstances and conditions which made it for the best interests of said children that the land be sold. No reference was made to the interests any after-born children of McCumber would have in the land or in the proceeds of its sale. The decree ordered the remainder of the proceeds of sale of the land after the payment of costs, expenses and debts directed to be paid, and the payment of the cash value to McCumber of his life estate, should be held by the guardian for the petitioners. Under the authorities this was not sufficient to divest the after-born children, should there be any, of an interest in the land. That might have been done so as to extinguish any interest in the land of the after-born children, should there be any, if such contingent interests had been preserved

and protected by the decree in the proceeds of the sale. But the possible interests of such contingent remainder-men do not appear to have been recognized and no provision was made for the protection of any such interests in the fund into which the land was converted. Such a provision was essential in order to divest them of their interests, should any such interests arise. It is suggested by appellant that the money is in the hands of the guardian and this may yet be done by some proceeding in the county court. We express no opinion upon that subject. It is sufficient to say it has not been done, and appellee cannot be compelled to accept a defective title upon the assumption of a possibility of the title being cleared up by some future proceeding in court. It is true, the circuit court in the proceeding to quiet title had jurisdiction of the subject matter and of the parties; that its decree is not void and is not subject to collateral attack. The decree of that court found that the interest in the land of any children that might afterwards be born to McCumber was divested by the proceedings in the county court and that the purchaser at the guardian's sale took the land free from any such possible interests. Notwithstanding this was an erroneous finding we must regard the decree as conclusive against all adult parties to the suit, but it is subject to attack by children of McCumber that may hereafter be born, at any time during their minority or within the period allowed by law after arriving at majority, for the prosecution of a writ of error for the reversal of said decree. *Haines* v. *Hewitt,* 129 Ill. 347; *Henderson* v. *Craig,* 179 id. 395.

In our opinion appellant's title was not such that appellee was obliged, under the contract, to accept it, and the circuit court did not err in dismissing the bill for specific performance.

The decree is affirmed.                    *Decree affirmed.*