Edgar F. Hazleton, S.
This proceeding is brought on by Charles F. Willis, one of the executors under the will of decedent : ‘ ‘ for the purpose of obtaining a determination as to the construction heretofore made concerning the disposition of property contained in said will. ’ ’ Four grandchildren of the testator, who were alive at the time of his death, have moved to dismiss the petition on the grounds that a construction of the will was had in a former accounting proceeding, and that the decree entered thereon is conclusive, “ that it is the law of the case that the matters embraced therein are res judicata, and that the petitioner herein, who also was a petitioner in the former accounting proceedings, is estopped from repudiating his own acts.” A fifth grandchild, Diane C. Willis, daughter of petitioner, born after the death of decedent, joins in the petition through her special guardian.
The executors under the will filed a petition for accounting dated March 23,1943. Although citation was issued and served, no further steps were taken, the proceeding apparently having been abandoned.
About six years later, a new petition for accounting, dated February 26, 1949, was filed, which requested that the original petition be discontinued. No demand was made for a construction nor did the citation which was issued and served contain any such notice. During this interim six-year period, the testator’s daughter, Lola Fairservis, died. But for this, the family tree remained unchanged since the testator’s death.
Service was made and jurisdiction obtained over all children and grandchildren then alive.
It should be noted that certain real property situate in Florida of which the testator died seized was recently sold adding greatly to the value of this estate. This realty was not listed in Schedule A of the account under real estate. There was no description of the property, nor was any value set forth in the account.
While no demand for a construction was made in the petition or citation, the accounting decree signed July 31, 1950, recites that the special guardian for three infant grandchildren then living, “ requested a determination as to the validity, construction or effect of the first and second dispositions contained in the Last Will and Testament ”. Apparently, upon this request, the Surrogate construed the trust provisions of the will in the accounting proceeding. In essence, he held that five separable trusts were created, each measured by the life of one of the testator’s children. Upon the death of each child, the remainder *220 would vest in his or her children, who were living at the death of the testator.
In the event that any child of the testator died without issue born prior to testator’s death, the corpus of that trust would vest in all the grandchildren of the testator who were living at the time of his death, per stirpes.
It seems that counsel at the time of this construction were consumed with the thought that if the class of remaindermen included grandchildren not alive at the testator’s death, the trust provision would be invalid. Such reasoning was fallacious.
After the entry of the accounting decree, the petitioner, Charles F. Willis, married and was blessed with the birth of an infant daughter, Diane C. Willis. Under the construction incidental to the accounting, she was disinherited from her grandfather’s estate, though all other grandchildren shared.
The accounting decree, of course, in addition to the construction provisions, discharged the executors as to all matters embraced within the accounting. As stated above, the decree was silent as to the Florida realty and did not account for same. As to distribution, it ordered that the accumulated income of the estate be paid to the five children of the testator who were life beneficiaries under the trust. It further ordered distribution of one fifth of the corpus of the estate to the children of Lola Fairservis, the testator’s daughter, who had died since the testator and prior to the accounting. None of the testator’s children had died without issue nor had any died with issue born subsequent to the testator’s death, and hence no question of distribution under those circumstances arose.
To my mind, that construction was unnecessary and amounted to so much surplusage. Although a construction of a will can be made by a Surrogate whenever necessary, same should not be made unless there is a present need. (Surrogate’s Ct. Act, § 40, subd. 8.) A succinct expression of judicial holdings interpreting section 40 and the word “necessary” is found in Jessup-Bedfield, Surrogates’ Law and Practice (Vol. 3, p. 827). (See, also, 4 Warren’s Heaton on Surrogates’ Courts, § 406, subd. 4.) The question then, simply put, is what portion of the will was it “ necessary ” to construe in order to account?
It would appear that a partial construction of the trust was necessary since the balance of money held by the executors had to be distributed. In this regard, the decree held that the testator created “ separate trusts for the benefit of each of his children, living at the time of his death, and that the trust in each instance was to terminate upon the death of the life beneficiary. ’ ’ Hence, the balance accounted for was to be paid *221 to the trustees of the five separable trusts. The income, of course, from the time of testator’s death to the date of accounting was to be distributed to the income beneficiaries.
It will be remembered that at the time of the accounting, four of testator’s children were living. The testator’s daughter, Lola Fairservis, had died survived by her children, all born in testator’s lifetime. The problem therefore arose as to the remainder interest of the trust created for the deceased daughter.
There was no accounting of the remainder interests of the other four trusts and the decree is specific in only distributing “ one-fifth of the corpus of the estate ” which represented the rest of the deceased daughter’s trust. Consequently, that portion of the decree dealing with construction and stating that all grandchildren born subsequent to testator’s death would not share in the trusts was mere surplusage. All four of Lola Fairservis’ children were born in testator’s lifetime, as were all the other grandchildren alive at the time of the accounting. Nevertheless, the decree created a fictitious dichotomy as to grandchildren born prior or subsequent to testator’s death. This holding was not necessary or pertinent to the trust ready for distribution; it was not necessary to the trusts still in existence; it was not necessary to uphold the validity of the testamentary plan. To close the class of remaindermen as of the testator’s death was purely academic to the issues then at hand. In fact, it represented a false theory of construction seized upon in an apparent attempt to satisfy all and limit the legatees to those persons then alive. Now that the estate has greatly increased in value and another “ heir apparent ” born, what was once surplus has become vital.
Therefore any attempt to limit the class of remaindermen of the trusts still in existence to grandchildren born during testator’s life is not binding upon this court and would result in an injustice to the infant Diane.
The problem of the conclusiveness of a decree as to persons then unborn has always been perplexing to the courts. There are numerous instances where the rights of unborns were held to be litigated in proceedings prior to birth. Decisions speak of this as a rule of “ convenience and necessity.” Nevertheless, in those cases, the courts carefully scrutinized all the circumstances and found the unborn to have had virtual representation: by other members of the same class then alive and having the same interest; by succeeding to some right, title or interest adequately presented at the hearing; or in some manner being privy to a former litigant. (Tonnele v. Wetmore, 195 N. Y. 436.)
*222 It is apparent that the safeguards recited in the Townele case were not present in the case at bar where the only persons alive in the same class as Diane C. Willis were the other grandchildren of the testator. In protecting their interests, however, they did not protect Diane. In reality, they presented the only argument by which they shared in the estate and Diane was excluded. Whatever their motives, they prevailed in having the class of grandchildren limited solely to themselves.
Clearly, Diane was not represented by her father in the construction since the grandchildren took directly from the testator and not through the income beneficiaries whose interests ceased upon death.
“ Kinship, whether by affinity or consanguinity does not create privity, except where it results in the descent of an estate from one to another. Therefore, there is no privity between husband and wife, or parent and child, or other relatives, when neither of them has succeeded to an estate or interest in property formerly held by the other.” (1 Freeman on Judgments [5th ed.], p. 962; Downey v. Seib, 185 N. Y. 427, 433; Schmidt v. Jewett, 195 N. Y. 486.)
Under the circumstances of this case, it would be unjust to close the door upon the infant, Diane, who was not a party to the old proceeding. She is entitled to her day in court. Therefore the prayer of petitioner is granted to the extent that this court will entertain this application. All parties are instructed to proceed accordingly.