Nathan" R. Sobel, S.
This proceeding raises an issue of virtual representation of unborn contingent remaindermen.
The purpose of the virtual representation statute (SOPA 315) is to dispense with the necessity of service of process on necessary or proper parties. Therefore a threshold determination, before any proof is taken and in anticipation of the nature and impact of the decree, must be made by the court.
Two questions must be answered: “ Does the statute permit virtual representations? ” “If it does, will the virtual representation in this particular proceeding be adequate? ”
The nature of the proceeding is always relevant. This is a proceeding to remove a trustee (SOPA 711). Contingent remaindermen are necessary parties (SOPA 103, 304; Matter of Bellinger, 35 A D 2d 1078; cf. Matter of Parker, 33 Misc 2d 780). Ordinarily such remaindermen, in being or not in being, would have little interest in who administers the trust corpus. But even at the threshold it is evident in this particular proceeding that they have a substantial concern.
Testator was survived by his widow and one son. The son is unmarried. His unborn children are contingent remainder-men of two trusts.
The first is the usual marital deduction A trust with power in the widow to appoint the principal. In default of the exercise of such power, the son is the remanderman. If he should predecease his mother, his unborn children are the contingent remaindermen.
The second is a B trust. The widow and son share the income. Upon the death of the widow, the son receives the principal if then living; and if not, then his as yet unborn children are the remaindermen.
The interests of the unborn contingent remaindermen which may be adversely affected arises in this as in most cases not from the nature of the proceedings or of the trusts but from the predictable impact of the decree. It suffices simply to note that the sole assets of both trusts are shares of stock in a family corporation which represent a controlling interest in the hands of the trustee. Among the grievances alleged are (1) a preference for higher salaries over dividends, and (2) a refusal by the trustee to exercise his power of invasion. It is quite obvious to the court even at this early stage *965 that the unborn contingent remaindermen require independent representation^
The most interesting aspect of the question is that the petitioners, mother and son, are demanding the appointment of a guardian ad litem and resisting virtual representation. The respondent trustee makes two contentions: (1) the unborn contingent remaindermen can be adequately represented by their father, and (2) a guardian ad litera cannot be appointed for unborns.
Before discussing these contentions .some generalizations are in order.
When “ person [s] under disability” (SOPA 103, subd. 37) are protected in a proceeding by a guardian ad litem appointed for that purpose ‘ ‘ the proceeding shall be binding upon such person to the same extent as if such person was under no disability ” (SOPA 406; Matter of Hawley, 100 N. Y. 206). Absent fraud by the guardian ad litem, a resulting decree is final ’ ’ and safe from subsequent direct or collateral attack. No case is reported in which a decree has been set aside for fraud. (In the experience of this court, the problem is overzealousness in representation, if that is a fault.)
How “final” is a decree based on virtual representation? Virtual representation is a doctrine which permits one who is a party (the “representor”) to represent the interests of persons or classes of persons (the “ representees ”) who otherwise would be necessary parties, without serving them with process or making them actual parties. The whole theory underlying the doctrine is similarity of economic interests. It is presumed that the representor in pursuing his own economic self-interest will necessarily protect the rights of the representees having the same interest. (See Practice Commentary, McKinney’s Cons. Laws of N. Y., Book 58A, SOPA 315, pp. 378-385; Looker, Virtual Representation, 34 Bklyn. L. Bev. 395 [1968]; Bodman & Bodman, Virtual Representation: Possible Extensions, ABA Beal Property, Probate & Trust Journal [Fall, 1971], pp. 281-291.) The doctrine was recognized by the courts long before the adoption of the statute. The present statute (SCPA 315) is borrowed from the similar statute applicable to inter vivos trusts (CPLB 7703, formerly Civ. Prac. Act, § 1311; see Ninth Annual Report of N. Y. Judicial Council, 1943, p. 311; Judd, Some Phases of Practice in Inter Vivos Trust Accountings in New York, 42 Col. L. Bev. 207 [1942]; Third Beport No. 4.1C [1964], Bennett Comm, on Estates, pp. 281-285; see, also, Beal Property Actions and Proceedings Law, §§ 903, 1501 et sea. and 1601 et seq.; Banking Law, § 100-c).
*966 Despite concerns expressed in the cited articles, there is no question of the constitutionality of the statute under substantive or procedural due process standards. Like the guardian ad litem statute, it provides for all necessary fundamental safeguards of notice and opportunity, etc., albeit by the representor instead of by the guardian. The sole problem is representation by one party of another party and the possibility inherent in such representation of resulting conflict of interest — a consequence never present where representation is by a guardian ad litem.
Basic to the conflict problem is that the court is required to reach a decision at the threshold. If it makes an error of law in interpreting the statute, it never acquires jurisdiction of the representees. Its decree will be subject to direct or collateral attack. (O’Donoghue v. Boies, 159 N. Y. 87, 100.)
Even if the court rightly concludes that the statute authorizes virtual representation, there is never any absolute assurance that the decree will not be vulnerable. If the decree results in an advantage to the representor vis-a-vis the representee, this is prima facie proof of either inadequacy of representation or conflict of interest. (Matter of Willis, 6 Misc 2d 218.) In short, virtual representation never assures the same finality as does representation by a guardian ad litem.
Section 315 is drafted to assure adequacy of representation and to prevent conflict of interest. To an extent, the requirements that representor and representee be of the “ same class ” or represent the “ same interest ”, or be “ related ” to one another are effective safeguards. If these safeguards in fact result in adequate representation the decree or order entered in any such proceeding shall be binding and conclusive on any person upon whom service of process is not required ” (SOPA 315, subd. 4). It is the court’s duty to determine at the threshold not only the existence of the statutory safeguards but also to predict in advance that the representation will be adequate, viz. that the same class or same interest will be treated alike in the decree.
Recognizing that in some proceedings, the safeguards will not adequately protect the representees, the statute (subd. 5) gives the court absolute discretion to require service of process upon the contingent remaindermen, if adults, or to appoint a guardian ad litem, if persons under disability.
Parenthetically it is observed that the statute is weakest in protecting unborn ’ ’ contingent remaindermen. The representor need not be of the same class, or represent the same *967 interest or be related although in most cases all these factors are generally present. If not present, the court should always require independent representation.
Where the safeguards are present, the virtual representation statute has its uses — for example when the number of parties required to be served are numerous or unwieldy or widely scattered. But as noted there must also be some assurance that there is no present or potential danger of conflict of interest between representor and representees.
That such assurance is frequently present is perhaps established by the infrequency of direct or collateral attacks on resulting decrees. There have been very few such decisions reported. In most, the courts have sustained the adequacy of virtual representation. (Monarque v. Monarque, 80 N. Y. 320; Pray v. Hegeman, 98 N. Y. 351; Kent v. Church of St. Michael, 136 N. Y. 10; Kirk v. Kirk, 137 N. Y. 510; Tonnele v. Wetmore, 195 N. Y. 436; Matter of Balfe, 49 K Y. S. 2d 882, affd. 269 App. Div. 904, affd. 295 N. Y. 975; Matter of Froehlich, 82 N. Y. S. 2d 884, affd. 275 App. Div. 707.) • It is reasonable to conclude that this is so because courts have also been cautious at the threshold in allowing virtual representation. Some of the decisions are of interest because of content. (See, e.g., Bowen v. Smith, 10 Paige Ch. 193; Kilpatrick v. Barron, 125 N. Y. 751; Matter of Eyre, 133 N. Y. S. 2d 511; Matter of Gargyan, 27 Misc 2d 137.) There are only a few reported decisions in which decrees based on virtual representations have been successfully attacked directly or collaterally. (McArthur v. Scott, 113 U. S. 340; Downey v. Seib, 185 N. Y. 427; Hess v. Hess, 233 N. Y. 164; Matter of Willis, 6 Misc 2d 218, 221, supra.)
We turn to the contentions of the trustee.
I
The trustee contends that the interest of the son and his yet unborn children is the same interest and since representor and representees are related, the court is justified in applying the virtual representation statute (SOPA 315, subd. 2, par. [a], cl. [ii]).
The son however is both an income beneficiary and a contingent (if he outlives his mother) remainderman. Technically one who is a combined income beneficiary-remainderman does not represent the ‘ ‘ same interest ’ ’ as straight remaindermen. As the cases establish, the threshold determinations turn not on whether the interests are technically the 'same but whether the interest of the representor in the particular proceeding is, or is likely to become, adverse to that of the representees. *968 In some it will Toe prima facie adverse; in others not at all. (Matter of Schwartz, 71 Misc 2d 80; Matter of Beim, 69 Misc 2d 638; Matter of Young, 68 Misc 2d 943; Matter of Leyshon, 67 Misc 2d 492; Matter of Trigger, 66 Misc 2d 110; Matter of Wehrli, 61 Misc 2d 933; Matter of Borax, 60 Misc 2d 645; Matter of Fuller, 57 Misc 2d 174; Matter of Sage, 54 Misc 2d 779; Matter of Snyder, 54 Misc 2d 695; Matter of Lachlan, 24 Misc .2d 323.)
These decisions do establish that courts are extremely cautious in allowing virtual representation. Justifiably so if final-* ity is the goal.
In the instant case it is evident at the threshold that the interests are likely to be adverse. This may be conclusively presumed since the son as the presumptive representor so indicates by demanding the appointment of a guardian ad litem for his unborn children.
II
The trustee contends that a guardian ad litem cannot be appointed for persons not in being, i.e., “unborns”. This contention is based on the much cited and discussed decision of Orange County Surrogate Taylor in Matter of Balfe (49 N. Y. S. 2d 882, affd. 269 App. Div. 904, affd. without opn. 295 N. Y. 975, supra). Balfe was a 1944 direct attack on a 1934 accounting decree by remaindermen who were unborn and neither parties nor represented by a guardian ad litem in the 1934 proceeding. In a thoroughly researched and well-supported decision, the Surrogate held that the unborns were virtually represented by persons in being in 1934 who were presumptively entitled to the “ same interest ” as the then unborns. This was the major premise of the decision, (pp. 886-892.)
Preliminarily, however, the Surrogate had considered a contention by the petitioners that they should have been represented in 1934 by a guardian ad litem. He held (1) that there was not in 1934 any statutory authority for the appointment of special guardians for unborns, and (2) that such a guardian may not be appointed until jurisdiction is obtained by service of process which of course cannot be effected upon unborns. This latter preliminary finding is of dubious precedent since the cases and statutes cited did not so hold. It seems certain that the affirmance by the Court of Appeals without opinion was on the major premise rather than the preliminary premisej.' For at the very same term that court had affirmed an opinion belbw in which unborns had been represented by guardians ad *969 litem. (See Matter of Scholtz v. Central Hanover Bank & Trust Co., 295 N. Y. 488.)
The virtual representation statute recognizes that guardians ad litem can be appointed for unborns (SOPA 315, subd. 2, par. [a], cl. [iii]) viz. “if it appears that there is no certain or presumptive remainderman in being * * * the court shall appoint a guardian ad litem to represent or protect the [unborn or unascertained] persons who eventually may become entitled to the interest.”
SCPA 2106 (“compromise of controversies”) specifically provides (subd. 2) — “A person under disability or a person not in being [unborns] who has a future contingent interest is a necessary jparty and shall be represented by a guardian ad litem” [It is observed in this regard that since most proceedings end in compromise, an unborn who is virtually represented initially will require the appointment of a guardian ultimately].
If the preliminary premise of Balfe that a guardian ad litem cannot be appointed until after process is served is correct, then these statutes (and others) which mandate such appointment are meaningless. Obviously “ unborns ” cannot be served with process. The court is therefore required to appoint a guardian ad litem to receive process in the first instance.
SOPA 311 is such a statute. While applicable by its terms solely to “ person [s] under disability” and not “to persons not in being ” it may nevertheless be utilized as a means of effecting service upon and appearance by unborns. Surrogate Cox in Matter of Gargyan (27 Misc 2d 137, supra) a construe-; tion proceeding, utilized the statute to appoint a guardian ad litem for unborns. That statute is construed by this court to permit the guardian to receive process in the first instance (cf. Surrogate’s Ct. Act, § 60, the predecessor statute).
In the above regard the Bennett Commission did recognize the necessity of providing by statute for representation of unborns by a guardian ad litem. It was proposed that ‘ ‘ persons not in being” should be included in the definition of “persons under disability.” (see Fourth Report, Bennett Comm, on Estates [1965], No. 7.12A, pp. 617-620). No bill was introduced to implement that recommendation. It may not be concluded as the trustee contends (see, also, 10 CoxArenson-Medina, N. Y. Civ. Prac., par. 301.08) that the commission or the Legislature purposefully rejected such an amendment. Similarly the reference to Balfe (supra) in the bill note appended by the commission to section 315 is construed *970 by this court to mean that there may under proper circumstances be virtual representation of unborns.
It is concluded that guardians ad litem may be appointed for unborns either under SOPA 311 or under authority inherent in the court.
Upon the finding heretofore made that the copetitioner son cannot adequately represent his unborn children (as he himself contends) the court directs that process be served upon such unborns by delivery of a supplemental citation to the guardian ad litem to be appointed by the court.