*773 The decedent, Norman J. Mercer, died on November 20, 2007, survived by his wife, Carol M. Mercer, and three children from a prior marriage. The decedent’s two sons (hereinafter the object-ants) filed joint objections to the propounded probate of a September 21, 2004, will and January 29, 2007, codicil, which reflected a testamentary scheme providing Carol with lifetime enjoyment of the bulk of the decedent’s approximately $8 million estate and appointed her, Martin D. Newman, and the Bank of New York, now known as BNY Mellon, N.A., as co-executors of the estate (hereinafter collectively the appellants).
By a settlement agreement dated November 24, 2009 (hereinafter the settlement), the appellants and the objectants agreed that the propounded instruments would be admitted to probate in return for an outright payment to the objectants in the sum of $1.5 million, to be made with estate funds in the nature of an “inheritance,” at the objectants’ request. The settlement also resolved a pending action which the objectants commenced in the United States District Court for the Eastern District of New York (hereinafter the federal action) against the appellants, both individually and in their representative capacities as trustees of two retirement trusts created under a post-nuptial marital agreement between the decedent and Carol (hereinafter the marital agreement).
On May 9, 2011, the appellants filed a petition for the judicial settlement of their account. In July 2011, the Surrogate appointed a guardian ad litem to represent infant beneficiaries having an interest in the estate along with unborn persons having a contingent interest in the remainder of one or more testamentary trusts created under the propounded will. Both the guardian ad litem and objectants filed objections to the account.
The appellants subsequently cross-moved to allow the interested persons to appear by virtual representation pursuant to SCPA 315 and to dismiss the guardian ad litem of those interested persons. The objectants opposed the cross motion on the ground that the request was untimely, having been made nine months after the guardian ad litem was appointed, and failed to include affidavits from the proposed “representor[s],” as required by 22 NYCRR 207.18. By order dated July 10, 2012, the Surrogate’s Court denied the cross motion without preju *774 dice. The Surrogate’s Court found, inter alia, that the cross motion was, in effect, untimely.
Shortly thereafter, the objectants moved for summary judgment on two of their objections to the account, which challenged the individual appellants’ use of estate funds to pay the legal fees they incurred in defending the federal action. In an order dated December 14, 2012, the Surrogate’s Court, inter alia, agreed with the objectants’ contention that the legal services underlying the disputed fees did not involve the administration of the estate.
Stipulations of settlement may not be set aside except on a showing of fraud, collusion, mistake, or accident (see Hallock v State of New York, 64 NY2d 224, 230 [1984]; Esposito v Podolsky, 104 AD3d 903, 905-906 [2013]) and “are favored by the courts and are not to be lightly set aside” (Freight Brokers Global Servs., Inc. v Molfetta, 90 AD3d 828, 828 [2011] [internal quotation marks omitted]), especially where the parties are represented by counsel (see id.; Kelley v Chavez, 33 AD3d 590, 591 [2006]).
In the case at bar, the settlement sought to “resolv[e] any and all claims and disputes raised or which could have been raised by any party, to date” with respect to the contested probate proceeding and the federal action, “including claims relating to the administration of [the decedent’s] probate estate created by [the decedent’s] will” (emphasis supplied). Thus, paragraph 14 provided for the mutual release of obligations “including but not limited to any claims and causes of action . . . that [the parties] have asserted against each other or claims they could have asserted in the above referenced lawsuits to date, provided however that the parties understand and agree that [the object-ants] are not releasing their rights to inherit under the Will, Codicil and [Marital] Agreement after Carol dies . . . with respect to [the decedent’s] probate estate” (emphasis supplied). Paragraph 23 similarly provided that the Settlement set forth the parties’ “entire agreement and understanding ... in respect to ... all claims that were or could have been made by any of the parties in any proceeding in the Surrogate’s Court, Suffolk County” (emphasis supplied).
In negotiating the settlement, the objectants were represented by experienced attorneys who had full knowledge of the claims that caused the appellants to incur legal fees in the federal action. The objectants’ belated challenge to the use of estate funds to pay the appellants’ legal fees in the federal action fits squarely in the category of claims that they released in the settlement, which “could have [been] asserted in the above *775 referenced lawsuits to date” or “could have been made by any of the parties in any proceeding in the Surrogate’s Court, Suffolk County” (cf. Koufakis v Siglag, 85 AD3d 872, 873 [2011]; Rubycz-Boyar v Mondragon, 15 AD3d 811 [2005]; Tavoulareas v Bell, 292 AD2d 256, 257 [2002]; compare Cahill v Regan, 5 NY2d 292, 299 [1959]). It is undisputed that the parties agreed that the $1.5 million payout under the settlement would be made from estate assets. Given the terms of the settlement, coupled with the appellants’ statutory right to seek payment of legal fees from estate funds pursuant to SCPA 2110 (2), the Surrogate’s Court erred in concluding that estate assets should not be used to fund the appellants’ claim for legal fees.
Accordingly, in the absence of any contention that the settlement was the product of fraud, collusion, mistake, or accident (see Hallock v State of New York, 64 NY2d at 230; Esposito v Podolsky, 104 AD3d at 905-906), the objectants failed to make a prima facie showing of their entitlement to judgment as a matter of law. The objectants’ motion for summary judgment should, therefore, have been denied, without regard to the sufficiency of the opposing papers (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]; Blanche, Verte & Blanche, Ltd. v Joseph Mauro & Sons, 79 AD3d 1082, 1084 [2010]; Qlisanr, LLC v Hollis Park Manor Nursing Home, Inc., 51 AD3d 651, 652 [2008]). Further, as there are no triable issues of fact, we award summary judgment to the appellants dismissing the subject objections pursuant to our authority to search the record and award summary judgment to the nonmoving party with respect to an issue that was the subject of the motion before the trial court (see CPLR 3212 [b]; Dunham v Hilco Constr. Co., 89 NY2d 425, 430 [1996]; cf. Homecomings Fin., LLC v Guldi, 108 AD3d 506, 509 [2013]; Branch Servs., Inc. v Cooper, 102 AD3d 645, 647 [2013]; Ho Sports, Inc. v Meridian Sports, Inc., 92 AD3d 915, 917 [2012]).
As the determination of whether virtual representation is appropriate is “a threshold determination, [to be made] before any proof is taken and in anticipation of the nature and impact of the decree” (Matter of Silver, 72 Misc 2d 963, 964 [Sur Ct, Kings County 1973]), the Surrogate’s Court properly denied that branch of the appellants’ cross motion which was to proceed by virtual representation, which was made nearly one year after the appellants filed the petition in this accounting proceeding and almost nine months after the guardian ad litem was appointed and appeared on behalf of his wards. Rivera, J.P., Leventhal, Hall and Roman, JJ., concur.